**FILED UNDER SEAL**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> -against- <br><br> SAKOYA BLACKWOOD, <br><br> Defendant. | 22 Cr. 460 (JMF) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**SAKOYA BLACKWOOD'S MOTION TO SUPPRESS**

Michael Tremonte
Anna Estevao
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel: 212.202.2600
E-mail: mtremonte@shertremonte.com

*Attorneys for Sakoya Blackwood*

**FILED UNDER SEAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 1

      The Facebook Warrant .................................................................................................. 1

      Premises Warrants ......................................................................................................... 3

ARGUMENT ............................................................................................................................. 4

I.      Evidence Seized as a Result of the Warrant for Ms. Blackwood's Facebook Account
      Should Be Suppressed ................................................................................................... 4

          A.     The Warrant Is Not Supported By Probable Cause .............................................. 5

          B.     The Warrant Is Overbroad ...................................................................................... 9

          C.     The Good Faith Exception Does Not Apply ........................................................ 12

CONCLUSION ........................................................................................................................ 13

**FILED UNDER SEAL**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Coolidge v. New Hampshire*,
 403 U.S. 443 (1971) ................................................................................................................ 4

*Illinois v. Gates*,
 462 U.S. 213 (1983) ................................................................................................................ 8

*In Matter of Search of Information Associated With the Facebook Account Identified By Username Aaron.Alexis That Is Stored At Premises Controlled By Facebook, Inc.*,
 21 F. Supp. 3d 1 (D.D.C. 2013) ............................................................................................ 11

*United States v. Benevento*,
 836 F.2d 60 (2d Cir. 1987) ...................................................................................................... 8

*United States v. Blake*,
 868 F.3d 960 (11th Cir. 2017) ............................................................................................... 10

*United States v. Galpin*,
 720 F.3d 436 (2d Cir. 2013) ................................................................................................ 5, 9

*United States v. Hamilton*,
 No. 6:18-CR-57-REW-10, 2019 WL 4455997 (E.D. Ky. Aug. 30, 2019) .............................. 6

*United States v. Harvey*,
 No. 2022 WL 684050 (E.D.N.Y. Mar. 8, 2022) .............................................................. 11, 12

*United States v. Hinton*,
 219 F.2d 324 (7th Cir. 1955) ................................................................................................... 6

*United States v. Kortright*,
 No. 10 CR 937(KMW), 2011 WL 4406352 (S.D.N.Y. Sept. 13, 2011) .............................. 7, 8

*United States v. Lahey*,
 967 F. Supp. 2d 698 (S.D.N.Y. 2013) ..................................................................................... 6

*United States v. McGrain*,
 No. 20-CR-6113-FPG-MJP, 2021 WL 1169195 (W.D.N.Y. Mar. 29, 2021) .......................... 6

*United States v. Meregildo*,
 883 F. Supp. 2d 523 (S.D.N.Y. 2012) ..................................................................................... 8

*United States v. Mize*,
 No.1:18-cr-74, 2020 WL 550579 (S.D. Ohio Sept. 11, 2020) ............................................... 10

*United States v. Ross*,
  456 U.S. 798 (1982) ................................................................................................... 4, 10

*United States v. Shipp*,
  392 F. Supp. 3d 300 (E.D.N.Y. 2019) ............................................................................ 9

*United States v. Singh*,
  390 F.3d 168 (2d Cir. 2004) ........................................................................................... 4

*United States v. Pugh*,
  15-CR-116 (NGG), 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) ........................... 7, 9, 10, 11

*United States v. Ulbricht*,
  858 F.3d 71 (2d Cir. 2017) .......................................................................................... 4, 9

*United States v. Walker*,
  965 F.3d 180 (2d Cir. 2020) ......................................................................................... 13

*United States v. White*,
  No. 19-CR-277 (JSR), 2020 WL 5757469 (S.D.N.Y. Sept. 28, 2020) ........................... 7

**Statutes**

U.S. Const. amend. IV ........................................................................................................ 4

**FILED UNDER SEAL**

Defendant Sakoya Blackwood, by and through her counsel, moves for the suppression of evidence seized pursuant to an unconstitutional warrant.

## PRELIMINARY STATEMENT

Evidence found on Ms. Blackwood's Facebook account should be suppressed. The warrant authorizing a search of the Facebook account lacked probable cause because the supporting affidavit failed to allege any information connecting the purported criminal conduct to the account. Even if such a information existed, the warrant is unconstitutionally overbroad, as such a slim connection cannot support the search of an entire Facebook account. Further, because the Facebook material was the principal evidence used to support the subsequent warrants to search Ms. Blackwood's residence, evidence seized from Ms. Blackwood' home pursuant to those search warrants must also be suppressed because it is fruit of the poisonous tree.

## FACTUAL BACKGROUND

### *The Facebook Warrant*

On July 8, 2022, the government sought and obtained a warrant to search Ms. Blackwood's Facebook account for evidence relating to an investigation into attempts to extort Victim-1, a CEO of a public company. Tremonte Decl. Exh. B at USAO_001931. According to the warrant, ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████ .

1

██████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████

    ███████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

    █████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████

    █████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████

The Facebook warrant singled out Ms. Blackwood based on the following two facts: (1) a TextMe account "associated with the Mia Friend Phone lists a 'display name' of mskoya," *id.* at

USAO_001937-1938, and (2) the "Mia" Gmail account was "linked by cookies" to Ms. Blackwood's Gmail account, meaning that both had been accessed from the same device, *id.* at USAO_001938.

The warrant application asserted that there was probable cause to believe that evidence existed on Ms. Blackwood's Facebook account because: (1) the Facebook account lists a display name associated with Ms. Blackwood, (2) the Facebook account was accessed at the IP address in Ms. Blackwood's home, (3) the Facebook account was in active use, and (4) on August 28, 2012, the Facebook account posted a photograph showing a Rolex watch which the affiant believed "signal[ed] the account owner's access to, or ownership of, expensive luxury items." *Id.* The affiant also made several assertions that the Facebook account was likely to have useful evidence "[b]ased on [her] training and experience." *Id.* at USAO_001939-1940.

*Premises Warrants*

On August 25, 2022, and August 31, 2022, the government obtained two warrants to search Ms. Blackwood's apartment. *See* Tremonte Decl. Ex. D at USAO_002000-2026; Tremonte Decl. Ex. E at USAO_002027-2039. To establish probable cause to search Ms. Blackwood's apartment, the supporting affidavits cited (1) that Ms. Blackwood's brother's IP address had been used to access the accounts associated with the alleged criminal conduct, Tremonte Decl. Ex. D. at USAO_002008-2009; (2) that Ms. Blackwood lived at the address associated with her brother's address, *id.* at USAO_002011-2013, and (3) evidence obtained from the prior search of Ms. Blackwood's Facebook account, namely that Ms. Blackwood was a member in a day-trading Facebook group that exchanged messages about earnings calls, the

3

performance of certain stocks, and other related topics—and four messages from November and December 2021 regarding Victim-1's company.  *Id.* at USAO_002010-2013.[1]

## ARGUMENT

I.  **Evidence Seized as a Result of the Warrant for Ms. Blackwood's Facebook Account Should Be Suppressed**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  It is "familiar history" that "indiscriminate searches and seizures conducted under the authority of 'general warrants'" were the "immediate evils" that "motivated the framing and adoption of the Fourth Amendment." *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017), *cert. denied sub. nom. Ulbricht v. United States*, 138 S. Ct. 2708 (2018).  Accordingly, the Warrants Clause ensures that "those searches deemed necessary should be as limited as possible."  *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

The Warrants Clause requires (1) proper scope and (2) particularity.  The appropriate scope of a warrant "is defined by the object of the search and the places in which there is probable cause to believe that it may be found," *United States v. Ross*, 456 U.S. 798, 824 (1982), such that there must be "a sufficient nexus between the criminal activities alleged" and the location or items searched.  *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004).  The Fourth Amendment's objective is to prevent "general, exploratory rummaging" in person's belongings.  *Coolidge*, 403 U.S. at 467.  Thus, "probable cause to believe that a container placed

---

[1] The August 31, 2022 premises warrant incorporated the probable cause submissions from the August 25, 2022 premises warrant.  *See* Tremonte Decl. Ex. E at USAO_002032.

4

in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab." *Ross*, 456 U.S. at 1982.

A warrant is sufficiently particular only if it (1) "identif[ies] the specific offense for which the police have established probable cause," (2) "describe[s] the place to be searched," and (3) "specif[ies] the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013).

    A.    **The Warrant Is Not Supported By Probable Cause**

The warrant for Ms. Blackwood's Facebook account is defective because the supporting affidavit fails to make out probable cause that Ms. Blackwood's Facebook account contained evidence of the alleged criminal activities.

First, the Facebook warrant lacked probable cause because the supporting affidavit provided no affirmation justifying that Ms. Blackwood—as opposed to her mother or brother—should have been the target of the search. The warrant singled Ms. Blackwood out based only on the following two facts: (1) the TextMe "account associated with the Mia Friend Phone lists a 'display name' of mskoya," Tremonte Decl. Ex. B at USAO_001937-1938, and (2) the "Mia" Gmail account was "linked by cookies" to Ms. Blackwood's Gmail account, meaning that both had been accessed from the same device, *id.* at USAO_001938. This is insufficient. There was no reason for law enforcement officers to believe that the Mia Friend Phone belonged to the perpetrator; "Mia" explicitly said that it was not her phone, that it was her "friend's phone," and that Victim-1 should not communicate with it. Thus, the far more logical inference would be that one of the other two occupants—█████████████—was the culpable party that simply borrowed Ms. Blackwood's phone. Moreover, the fact that the "Mia" account was "linked by cookies" to Ms. Blackwood's Gmail account shows only that the same device at some point accessed both accounts. *See id.* at USAO_001938. The affiant essentially asserted that the

use of the same device to access separate accounts is sufficient, without more, to establish a link between those accounts sufficient to search accounts belonging to every person that has ever accessed the device. It does not, just as evidence of anonymous criminal activity found in an apartment's walkway or lobby does not give probable cause to search everyone living in the building. *See United States v. Hinton*, 219 F.2d 324, 326 (7th Cir. 1955) (invalidating warrant to search all units in apartment building where sole evidence supporting search of most units was that "narcotics were sold somewhere in the building"). A device may function similarly like a "common area" that many co-residents can access—and the government bears the burden of showing that no one else in the residence had access to the device in question before it can establish probable cause to search a particular person with access to the device.

The Facebook warrant is also deficient because there is no probable cause to believe, even if Ms. Blackwood were involved in the communications with Victim-1, that there would be evidence of those communications on her Facebook account. The affidavit establishes only that the Facebook account belonged to Ms. Blackwood, not that any evidence would exist on the account. *See United States v. Lahey*, 967 F. Supp. 2d 698, 713 n.16 (S.D.N.Y. 2013) ("[T]he question of whether there was probable cause to believe that [defendant] was a drug dealer is potentially distinct from the question of whether there was probable cause to search his apartment." (citing cases)); *see also United States v. McGrain*, No. 20-CR-6113-FPG-MJP, 2021 WL 1169195, at *4 (W.D.N.Y. Mar. 29, 2021) (affirming probable cause to search Facebook account where affiant proffered evidence of "extensive Facebook conversation between [Defendant] and the Minor Victim" including "specific Facebook messages, with date and timestamps"); *United States v. Hamilton*, No. 6:18-CR-57-REW-10, 2019 WL 4455997, at *2 (E.D. Ky. Aug. 30, 2019) (probable cause existed to search Facebook account because affidavit

detailed "at least one message in [the defendant's] Facebook account wherein evidence of a crime . . . would be found").

The only fact asserted in support of probable cause was that the Facebook account features a 2012 photograph of a Rolex watch which, based on the agent's training and experience, "is intended to signal the account owner's access to, or ownership of, expensive luxury items." Tremonte Decl. Ex. B at USAO_001939. Of course, a 2012 photo of a watch is necessarily stale and cannot support probable cause to investigate an offense that allegedly occurred in 2022, ten years later. *See United States v. Kortright*, No. 10-CR 937(KMW), 2011 WL 4406352, at *7 (S.D.N.Y. Sept. 13, 2011) (evidence of defendant's drug deals a year prior were too stale to support probable cause to search defendant's house). It also cannot be that an innocuous picture of an expensive item could justify searching an entire social media account, especially where an individual signaling their "access to, or ownership of, expensive luxury items" has nothing to do with the offense conduct being investigated. There was no evidence that Ms. Blackwood used Facebook to communicate or share information about the offense conduct, which is the type of information that usually forms the basis for probable cause in a social media warrant. *See, e.g.*, *United States v. White*, No. 19-CR-277 (JSR), 2020 WL 5757469, at *3 (S.D.N.Y. Sept. 28, 2020) (probable cause to search Instagram account where alleged victim of robbery told investigators that he had seen defendant wearing some of the stolen jewelry in an Instagram photo and publicly available photos on Instagram showed defendant wearing jewelry resembled that which he allegedly stole from victim); *United States v. Pugh*, 15-CR-116 (NGG), 2015 WL 9450598, at *26 (E.D.N.Y. Dec. 21, 2015) (probable cause to search Facebook account where investigators knew defendant, charged with terrorist-related crimes, used Facebook to view ISIL videos and "had viewed pro-terrorist post" on a public

Facebook page); *United States v. Meregildo*, 883 F. Supp. 2d 523, 526 (S.D.N.Y. 2012) (probable cause to search Facebook account where defendant "posted messages regarding prior acts of violence, threatened new violence to rival gang members, and sought to maintain the loyalties of other alleged members of [defendant's] gang").

The supporting affidavit otherwise relied entirely on the affiant's assertions that her personal training and experience led her to believe the Facebook account would contain relevant evidence. That is not enough. *See United States v. Benevento*, 836 F.2d 60, 71 (2d Cir. 1987) (noting that agent's testimony of opinion, standing alone, might not be enough to establish sufficient nexus to search suspected drug traffickers' home); *United States v. Kortright*, No. 10-CR-937 (KMW), 2011 WL 4406352, at *7 (S.D.N.Y. Sept. 13, 2011) (finding detective's testimony that training and experience that drug traffickers typically keep evidence in their homes insufficient to support search warrant). Without more, an agent's opinion that she will likely uncover evidence relevant to the charged criminal activity fails to satisfy the Fourth Amendment's probable cause requirements.

The application to search Ms. Blackwood's Facebook account is based on the general observation that targets under investigation, like everyone else, use social media to communicate with other people. To base probable cause solely on this statement would allow warrants to issue in every single arrest, regardless of whether there are any facts whatsoever connecting the offense to the account to be searched. That is not the law. *See Illinois v. Gates*, 462 U.S. 213, 239 (1983) (probable cause not found where affidavit is supported by "mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment").

**FILED UNDER SEAL**

B.     The Warrant Is Overbroad

Even if probable cause justified some search of Ms. Blackwood's Facebook account, the warrant at issue was not sufficiently particularized to the parts of Ms. Blackwood's Facebook account that might contain evidence of the offenses alleged.

In *United States v. Shipp*, 392 F. Supp. 3d 300 (E.D.N.Y. 2019), Judge Garaufis extensively discussed the "serious concerns" associated with Facebook warrants like the one at issue here, highlighting the Second Circuit's repeated observation that "[a] general search of electronic data is an especially potent threat to privacy" because devices and accounts "may be 'akin to a residence in terms of the scope and quantity of private information [they] may contain.'" *Id.* at 307 (quoting *Ulbricht*, 858 F.3d at 99; *Galpin*, 720 F.3d at 443). This threat is "further elevated" in a search of Facebook data because, "perhaps more than any other location—*including a residence, a computer hard drive, or a car*—Facebook provides a single window through which almost every detail of a person's life is visible." *Shipp*, 392 F. Supp. 3d at 308 (emphasis added). Not only do people "entrust information concerning just about every aspect of their lives" to Facebook, but Facebook also "proactively collects and aggregates information about its users and non-users in ways that we are only just beginning to understand." *Id.* (citing news articles). Thus, it is "hard to imagine" many searches "more invasive" than a search of all data associated with a Facebook account. *Id.*

Judge Garaufis also noted that "Facebook is different from hard drives or email accounts in many ways, including that the information associated with the account is categorized and sorted by the *company—not by the user*." *Id.* at 309 (emphasis added). Consequently, Facebook is less like other digital media and more like a residence, where "the physical dimensions of the evidence sought will naturally impose limitations on where an officer may pry." *Id.* For example, "there is no possibility that a user could have filed an incriminating photo as a 'poke,'

9

and there is no chance that an incriminating message will be stored as a third-party password or a rejected friend request." *Id.* Thus, Facebook searches differ from other digital searches in that they "(1) present a greater risk that every warrant for electronic information will become, in effect, a general warrant, and (2) are more easily limited to avoid such constitutional concerns." *Id.* (quotations omitted). Therefore, "courts can and should take particular care to ensure that the scope of searches involving Facebook are 'defined by the object of the search and the places in which there is probable cause to believe that it may be found.'" *Id.* at 309-310 (quoting *Ross*, 456 U.S. at 824.

Judge Garaufis concluded that the warrant in *Shipp* was not sufficiently particularized because it required the disclosure of "sixteen categories of information associated with the Facebook account, a seemingly boilerplate list apparently designed to capture all information associated with the account." *Shipp*, 392 F. Supp. 3d at 310. The warrant required disclosure of information generated in connection with services "that appear entirely unrelated to the facts in the Affidavit and the crime charged." *Id.* Accordingly, Judge Garaufis reasoned that the warrant in question "authorize[d] precisely the type of exploratory rummaging the Fourth Amendment protects against." *Id.* at 311 (quotation omitted). In recent years, other courts across jurisdictions have raised the same concerns. *See United States v. Mize*, No. 1:18-cr-74, 2020 WL 550579, at *5 (S.D. Ohio Sept. 11, 2020) (citing cases from within the Second Fourth, Sixth, Eighth, Ninth, Eleventh Circuits); *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) (finding that a search of an entire Facebook account was overly broad and explaining that "when it comes to Facebook account searches, the government need only send a request with the specific data sought and Facebook will respond with precisely that data").

**FILED UNDER SEAL**

The warrant at issue here raises identical concerns. It requested seventeen categories of information, including categories that bear no logical connection to the criminal activity alleged in the affidavit or encompassed by the offenses described. *See* Tremonte Decl. Ex. B at USAO_001947-1948. Although the affidavit alleged without factual basis that chats, pictures, videos, and access logs may be relevant to purported extortionate conduct, it did not allege how other pieces of requested information[2] would be relevant. *See id.* at USAO_001940-1941. Just as in *Shipp*, the warrant here was overbroad and essentially effectuated a general search.

Moreover, the warrant was overbroad because it sought information starting from November 1, 2021, even though the affidavit's earliest allegation of criminal conduct was in January 2022, and the bulk of the alleged conduct occurred after March 16, 2022. *See id.* at USAO_001931-36, 001947-48. Where "it is not obvious" why information generally before the period of offensive conduct alleged is required to link the subject of the search to the conduct, and where a temporal limitation is "feasible," courts require strict time limitations. *See United States v. Harvey*, No. 21-CR-335 (SJ), 2022 WL 684050, at *10 (E.D.N.Y. Mar. 8, 2022) (citing *Shipp*, 392 F. Supp. 3d at 310).[3]

---

[2] Specifically, the affidavit did not assert why identifying information, other profile information (including likes, notes, friend lists and requests, groups of which the user is a member, event postings, gifts, posts, and tags), associated internet browsers, "fan" pages, Facebook searches, data regarding Facebook Marketplace, data regarding types and length of service, privacy settings, and support logs would be relevant to the offensive conduct alleged. Moreover, at least one court has indicated that requests for profile information revealing professional or personal affiliations, such as membership in and posts on groups or fan pages, violates the First Amendment right to association when not appropriately justified. *In Matter of Search of Information Associated With the Facebook Account Identified By Username Aaron.Alexis That Is Stored At Premises Controlled By Facebook, Inc.*, 21 F. Supp. 3d 1, 7 (D.D.C. 2013).

[3] Notably, the government's warrant to search Ms. Blackwood's Google account proposes a search of items starting from January 1, 2022. *See* Tremonte Decl. Ex. C at USAO_001996. There, the government recognized that a January 1, 2022 starting date was reasonable given the conduct alleged.

11

As described above, there is no probable cause to search Ms. Blackwood's Facebook account—and even if there were, the affiant provided no basis to believe that most of the information included in the search was relevant to the offenses alleged. Accordingly, the warrant's reaches beyond the earliest date of purported offensive conduct violates the Fourth Amendment.

C.   **The Good Faith Exception Does Not Apply**

The government cannot rely on the good faith exception in obtaining the Facebook warrant. There was no basis to believe that evidence of the crime would be found on Ms. Blackwood's Facebook account. Where a warrant requesting search of a full Facebook account features both a "thin basis for probable cause" and overbreadth, courts find that the good faith exception does not apply because the warrant is "so facially deficient that reliance upon it [is] unreasonable." *See Harvey*, 2022 WL 684050, at *8-9. The good faith exception should not apply here on the same basis—the warrant to search Ms. Blackwood's Facebook account is supported by little if any cause, and it is strikingly overbroad.

Enough time has passed the courts are starting to reject arguments of good faith from the government—especially where the warrants lack probable cause as to *any* search of the account. *See Harvey*, 2022 WL 684050, at *10. For instance,, Judge Rakoff recently rejected claims of good faith and suppressed Facebook evidence because of the lack of evidence to suggest that evidence of the crime would be found on a defendant's Facebook account, despite the fact that the defendant was Facebook friends with two co-conspirators. *See United States v. Scales*, No. 19-cr-00096-JSR, ECF No. 155 at 17-18 (S.D.N.Y. Apr. 26, 2021).

Finally, because the illegally collected Facebook evidence served as the principal evidence in support of the warrant to search Ms. Blackwood's home, *see* Tremonte Decl. Ex. D at USAO_002010-2013, all evidence collected pursuant to the premises warrant must also be

**FILED UNDER SEAL**

suppressed as fruit of the poisonous tree. *See United States v. Walker*, 965 F.3d 180, 190 (2d Cir. 2020).

## CONCLUSION

For the foregoing reasons, this Court should suppress evidence seized pursuant to the Facebook warrant and grant such further relief as the Court may deem just and proper.

Dated: February 2, 2023
  New York, New York

  Respectfully submitted,

  SHER TREMONTE LLP

  /s/Michael Tremonte
  Michael Tremonte
  Anna Estevao
  90 Broad Street, 23rd Floor
  New York, New York 10004
  T: (212) 202-2600
  F: (212) 202-4156
  mtremonte@shertremonte.com

  *Attorneys for Sakoya Blackwood*

13