UNITED STATES DISTRICT COURTs
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  -against-<br><br>SAKOYA BLACKWOOD,<br><br>                    Defendant. | 22 Cr. 460 (JMF) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
SAKOYA BLACKWOOD'S MOTION TO DISMISS AND MOTION TO SUPPRESS**

Michael Tremonte
Anna Estevao
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel: 212.202.2600
E-mail: mtremonte@shertremonte.com

*Attorneys for Sakoya Blackwood*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I. The Facebook Warrant Was Not Supported by Probable Cause, Was Overbroad, and Could Not Have Been Relied on in Good Faith ................................................................. 1

II. Count One and Count Three Do Not Sufficiently Allege Extortion .................................. 5

III. Count Two of the Indictment Should Be Dismissed Because It Punishes Conduct Protected by the First Amendment and Is Unconstitutionally Vague ................................ 6

    A.    The Cyberstalking Statute Encompasses Activity Protected by the First Amendment ............................................................................................................... 6

    B.    The Cyberstalking Statute Is Unconstitutionally Vague ........................................ 8

CONCLUSION ............................................................................................................................ 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) .................................................................................................................. 7

*United States v. Ackell*,
  907 F.3d 67 (1st Cir. 2018) ....................................................................................................... 8

*United States v. Avenatti*,
  No. (S1) 19 Cr. 373 (PGG), 2020 WL 70951 (S.D.N.Y. Jan. 6, 2020) ..................................... 5

*United States v. Blake*,
  868 F.3d 960 (11th Cir. 2017) ................................................................................................... 2

*United States v. Bowker*,
  372 F.3d 365 (6th Cir. 2004) ..................................................................................................... 9

*United States v. Burkhow*,
  No. 19-CR-59-CJW-MAR, 2020 WL 589536 (N.D. Iowa Feb. 6, 2020) ................................. 3

*United States v. Cassidy*,
  814 F. Supp. 2d 574 (D. Md. 2011) ........................................................................................... 7

*United States v. Chavez*,
  423 F. Supp. 3d 194 (W.D.N.C. 2019) ...................................................................................... 3

*United States v. Conlan*,
  786 F.3d 380 (5th Cir. 2015) ..................................................................................................... 8

*United States v. Fleury*,
  20 F.4th 1353 (11th Cir. 2021) .................................................................................................. 8

*United States v. Ford*,
  184 F.3d 566 (6th Cir. 1999) ..................................................................................................... 4

*United States v. Hamilton*,
  No. 6:18-CR-57-REW-10, 2019 WL 4455997 (E.D. Ky. Aug. 30, 2019) ............................ 2, 3

*United States v. Harris*,
  No. 20-cr-98 (SRN/TNL), 2021 WL 4847832 (D. Minn. July 26, 2021) ................................. 2

*United States v. Harvey*,
  No. 21-CR-335 (SJ), 2022 WL 684050 (E.D.N.Y. Mar. 8, 2022) ............................................ 4

*United States v. Hernandez*,
   No. 09 CR 625(HB), 2010 WL 26544 (S.D.N.Y. Jan. 6, 2010) .................................................. 3

*United States v. Irving*,
   347 F. Supp. 3d 615 (D. Kan. 2018) ........................................................................................ 3

*United States v. Jackson*,
   180 F.3d 55 (2d Cir. 1999) ....................................................................................................... 6

*United States v. McClain*,
   No. 19-CR-40A, 2019 WL 8955241 (W.D.N.Y. Dec. 9, 2019) ................................................ 5

*United States v. Mize*,
   No. 1:18-cr-74, 2020 WL 5505793 (S.D. Ohio Sept. 11, 2020) ............................................... 2

*United States v. Osinger*,
   753 F.3d 939 (9th Cir. 2014) ................................................................................................ 7, 9

*United States v. Petrovic*,
   701 F.3d 849 (8th Cir. 2012) .................................................................................................... 6

*United States v. Shipp*,
   392 F. Supp. 3d 300 (E.D.N.Y. 2019) .............................................................................. 2, 3, 4

*United States v. Shrader*,
   675 F.3d 300 (4th Cir. 2012) .................................................................................................... 8

*United States v. Sryniawski*,
   48 F.4th 583 (8th Cir. 2022) ......................................................................................... 6, 7, 8, 9

*Virginia v. Black*,
   538 U.S. 343 (2003) .................................................................................................................. 8

Sakoya Blackwood respectfully submits this memorandum of law in further support of her pretrial motions for dismissal and suppression. For the reasons stated below, in addition to those raised in Ms. Blackwood's opening brief, the motions should be granted.

I.  **The Facebook Warrant Was Not Supported by Probable Cause, Was Overbroad, and Could Not Have Been Relied on in Good Faith**

In its response, the government fails to explain how the "Mia Friend Phone" or the "accounts linked by cookies" connect Ms. Blackwood—as opposed to her co-residents—to the alleged criminal conduct. The government had no evidence to believe that the "Mia Friend Phone" belonged to the perpetrator. Similarly, the government assumes without basis that when a single device accesses two accounts, that means that the two accounts must belong to the same person. This ignores the likelihood that two people could have used the same device to log on to their respective accounts. The government's presumption that devices are not shared and are inaccessible to others in the same residence goes against common sense. This information is insufficient to establish probable cause to rummage through a person's personal information contained in email and social media accounts.

Even if this evidence is sufficient to believe that Ms. Blackwood was the person controlling the suspect accounts, the government fails to establish probable cause that relevant evidence would be found on Ms. Blackwood's Facebook account. The government relies exclusively on Agent Wheeler's "training, experience, and involvement in this and similar investigations" to support a search for "reference to other accounts that are used" to commit the alleged conduct and for "user attribution evidence" to show "who was using or controlling the account." Opp'n 11-12. But the government acknowledges that there was no evidence to suggest that any Facebook account was used to communicate with alleged victims. *See id.* at 11 ("[C]ommunications with Victim-1 or other potential victims were not among the evidence

1

sought or expected to be found on the Blackwood Facebook Account."). Thus, any user attribution evidence is irrelevant. And there were no "other accounts that [were] used" in connection with the offenses that Ms. Blackwood's account could conceivably have "reference[d]." Because there was no reason to suspect that Ms. Blackwood used the Facebook account to communicate with Victim-1 or other potential victims, information about who was controlling the account is irrelevant. Moreover, Agent Wheeler's belief that a 2012 picture of a Rolex watch "intended to signal the account owner's access to, or ownership of luxury items," Opp'n 12, fares no better. A picture of an expensive item, without more, does not provide probable cause to believe a Facebook account will contain evidence of proceeds obtained from crime—much less a picture posted a decade prior to the commission of the alleged conduct. The government's argument is also undercut by the fact that there was no evidence to believe that there were *any* proceeds from the alleged conduct.

The Facebook warrant was also plainly overbroad. While the government argues that courts have "uniformly" held that warrants may require the production of an entire digital account, the government cites no cases regarding Facebook accounts. Opp'n 7, 12-13. Rather, courts across jurisdictions have emphasized that Facebook searches require more circumscription than other digital searches because they "(1) present a greater risk that every warrant for electronic information will become, in effect, a general warrant, and (2) are more easily limited to avoid such constitutional concerns." *United States v. Shipp*, 392 F. Supp. 3d 300, 309 (E.D.N.Y. 2019); *accord United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017); *United States v. Harris*, No. 20-cr-98 (SRN/TNL), 2021 WL 4847832, at *6 (D. Minn. July 26, 2021); *United States v. Mize*, No. 1:18-cr-74, 2020 WL 5505793, at *5 (S.D. Ohio Sept. 11, 2020); *United States v. Hamilton*, No. 6:18-CR-57-REW-10, 2019 WL 4455997, at *4-5 (E.D. Ky. Aug.

30, 2019); *United States v. Burkhow*, No. 19-CR-59-CJW-MAR, 2020 WL 589536, at *8 (N.D. Iowa Feb. 6, 2020); *United States v. Chavez*, 423 F. Supp. 3d 194, 206-207 (W.D.N.C. 2019); *United States v. Irving*, 347 F. Supp. 3d 615, 624 (D. Kan. 2018). Accordingly, warrants like the one at issue are overbroad when they proffer a "boilerplate list" designed to "capture all information associated with the account." *Shipp*, 392 F. Supp. 3d at 310. The government argues that boilerplate lists are acceptable when a warrant seeks "user attribution information"—i.e., access to all evidence on a Facebook account because that evidence provides information about the account. If the Court were to accept this justification, the government could always search the entirety of any Facebook account without limit regardless of the criminal conduct alleged. This would render the particularity requirement meaningless. *See Hamilton*, 2019 WL 4455997, at *5 ("Taken to its logical conclusion, this argument nearly obviates the particularity requirement altogether; almost anything in someone's social media data can be used to show they did (or did not) own and control that account.").

Second, the government cannot justify its search for information dated prior to January 1, 2022, which predates any alleged criminal conduct. The government does not explain why a log-in on November 10, 2021 might be relevant to this alleged conduct, and courts do not countenance searching digital accounts dating back to the earliest recorded instance of active use. While some courts conclude that the government may execute digital searches without appropriate temporal limitation in complex cases where those searches are otherwise particularized, courts require stricter temporal limitations where the warrant is *not* otherwise particularized. *See United States v. Hernandez*, No. 09 CR 625(HB), 2010 WL 26544, at *9 (S.D.N.Y. Jan. 6, 2010) ("A failure to indicate a time frame could render a warrant constitutionally overbroad because it could allow the seizure of records dating back arbitrarily

far and untethered to the scope of the affidavit which ostensibly provided probable cause." (internal quotation marks and alteration omitted)); *see also United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999) ("Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad.").

Because the Facebook Warrant was, on its face, not supported by probable cause and woefully overbroad, the government cannot rely on the good-faith exception to prevent suppression of evidence obtained as a result of the warrant. In support of the good-faith exception, the government simply argues that the affidavit supporting the warrant was "lengthy, thorough, accurate, and approved by a magistrate judge," Opp'n 14, and that it was sufficiently particularized, Opp'n 15. But the lack of factual evidence supporting probable cause coupled with the type of overbreadth routinely rejected by courts renders reliance on the magistrate judge's approval unreasonable. *See United States v. Harvey*, No. 21-CR-335 (SJ), 2022 WL 684050, at *10 (E.D.N.Y. Mar. 8, 2022); *United States v. Scales*, No. 19-cr-00096-JSR, ECF No. 155 at 17-18 (S.D.N.Y. Apr. 26, 2021). At least since Judge Garaufis's extensive analysis in *Shipp*, the government has been on notice that these types of Facebook warrants do not satisfy the Fourth Amendment—especially when such warrants lack probable cause to perform any search of a Facebook account in the first place.

Accordingly, all fruits of the poisonous tree must be suppressed—including evidence obtained from the Premises Warrant that followed. The government contends that the Facebook evidence did little to support probable cause to search Ms. Blackwood's apartment, but that contention is undermined by Agent Wheeler's affidavit. To establish probable cause, the government asserted that (1) "all of the different accounts used to further the harassment and extortion scheme targeting Victim-1 and Victim-2 connected to the internet" using Ms.

Blackwood's brother's router, (2) two of Ms. Blackwood's accounts used that router, (3) two of Ms. Blackwood's accounts were linked by cookies to two of the accounts allegedly implicated in criminal conduct, (4) Ms. Blackwood's nickname is associated with the Mia Friend Account, and (5) Ms. Blackwood "has specific knowledge of Victim-1's company's stock price." Tremonte Decl. Ex. D at USAO_002014. The government learned of Ms. Blackwood's knowledge of the stock price from Facebook evidence. *See id.* at USAO_002012. As explained above and in Ms. Blackwood's opening brief, the other four categories of information are insufficient to establish probable cause to target a search of Ms. Blackwood's residence—only the fifth piece of information arguably establishes a connection to Ms. Blackwood (as opposed to her co-residents). Accordingly, without the evidence obtained pursuant to the Facebook Warrant, the government would not have had probable cause to perform its premises search, and the evidence from that search must also be suppressed.

## II. Count One and Count Three Do Not Sufficiently Allege Extortion

An indictment may be dismissed on a pretrial motion where "the material facts are undisputed, there is no government objection, and only an issue of law remains." *United States v. McClain*, No. 19-CR-40A, 2019 WL 8955241, at *2 (W.D.N.Y. Dec. 9, 2019) (citing cases from the Seventh, Ninth, and Tenth Circuits). The government argues that, because the indictment contains the elements of the offenses charged and describes the time, place, and circumstances of the offenses, Count One and Count Three cannot be dismissed. Opp'n 18-19. But where the indictment's factual allegations, "even [if] accepted as true, do not describe 'wrongful conduct' under the law," it may be dismissed even though it is otherwise "legally sufficient." *See United States v. Avenatti*, No. (S1) 19 Cr. 373 (PGG), 2020 WL 70951, at *4-5 (S.D.N.Y. Jan. 6, 2020) (analyzing whether the indictment should be dismissed because it failed

5

to plead facts demonstrating wrongful conduct as to counts under 18 U.S.C. § 875(d) and 18 U.S.C. § 1951(b)(2)).

According to the government's allegations, Ms. Blackwood "threatened to release" sensitive photographs and communications involving "a particular individual who is the Chief Executive Officer at a publicly traded company ('Victim-1')," Indictment at 1-2, and then claimed that the information was being sold to the media for $250,000, Opp'n 1. Whether Ms. Blackwood's alleged valuation of the information bears a relationship to the actual market value of the information, and thus whether she had a claim of right to the funds sought, is properly decided on a motion to dismiss, as it would render the Indictment insufficient for lack of wrongfulness. *Cf. United States v. Jackson*, 180 F.3d 55, 71 (2d Cir. 1999) (concluding that conduct was wrongful where defendant sought $40 million in exchange for silence).

### III. Count Two of the Indictment Should Be Dismissed Because It Punishes Conduct Protected by the First Amendment and Is Unconstitutionally Vague

#### A. The Cyberstalking Statute Encompasses Activity Protected by the First Amendment

Count Two violates the First Amendment both as applied to Ms. Blackwood and on its face. As applied to Ms. Blackwood, 18 U.S.C. § 2261A(2) runs afoul of the First Amendment because the speech for which Ms. Blackwood has been charged is protected speech. The government makes two assertions that Ms. Blackwood's speech is unprotected; both are wrong.

First, Ms. Blackwood's speech is not speech integral to criminal conduct. The government argues that her speech was integral to the criminal conduct of cyberstalking itself. Opp'n 23. But that argument is "circular and unpersuasive," because "Congress may not define speech as a crime, and then render the speech unprotected by the First Amendment merely because it is integral to speech that Congress has criminalized." *United States v. Sryniawski*, 48 F.4th 583, 588 (8th Cir. 2022). In the cases cited by the government, like *United States v.*

6

*Petrovic*, 701 F.3d 849 (8th Cir. 2012) and *United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014), the speech was integral to criminal conduct *other* than speech prohibited by Section 2261A. *See Sryniawski*, 48 F.4th at 588 (noting that both *Petrovic* and *Osinger* involved "another offense that does not involve protected speech"). The government also argues that Ms. Blackwood's speech is integral to her alleged extortion, Opp'n 24, while simultaneously arguing that whether the alleged facts even constitute extortion should wait until trial, *id.* at 19-21. Because the government has failed to sufficiently allege wrongful conduct with respect to Ms. Blackwood's extortion counts, as discussed above, Ms. Blackwood's speech cannot be integral to extortion either.

Second, Ms. Blackwood's speech is not defamation. The government claims that her speech was defamatory because she reiterated that Victim-1 had sex with a minor, even after Victim-1 clarified that he had never met the woman in the pictures "Mia" sent to him. Opp'n 25. To start, Ms. Blackwood never made any of these statements publicly, which is an element of defamation. *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.9 163, 176 (2d Cir. 2000) (libel requires "publication to a third party"). Moreover, it is not clear that Victim-1 denied having sex with a minor, and other messages sent by Victim-1 could be construed to support the allegations. Thus, the government cannot show that Ms. Blackwood's speech was knowingly false. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) (defamation against public figure requires "knowledge of [statement's] falsity" or "reckless disregard for the truth"). For both reasons, Ms. Blackwood's speech was not defamatory and is thus protected. Accordingly, the case is not distinguishable from *United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011), and Count Two violates the First Amendment as applied to Ms. Blackwood.

Indeed, this case demonstrates why 18 U.S.C. § 2261A(2) is overbroad and thus facially

invalid: it covers all harassing or intimidating speech that may cause substantial emotional distress, even when that speech is protected by the First Amendment. The government cites only two cases rejecting overbreadth challenges to the current version of the cyberstalking statute: *United States v. Fleury*, 20 F.4th 1353 (11th Cir. 2021) and *United States v. Ackell*, 907 F.3d 67 (1st Cir. 2018). While *Ackell* acknowledges the statute's propensity to "reach highly expressive conduct," *Ackell*, 907 F.3d at 73, neither case considers the plethora of protected speech covered by the statute, including essentially all repeated negative political speech intended to cause substantial emotional distress to effect change or express discontent.

### B.   The Cyberstalking Statute Is Unconstitutionally Vague

Because the current iteration of 18 U.S.C. § 2261A(2) by its terms encompasses intent to engage in a course of non-violent conduct, it is unconstitutionally vague. The government contends that the terms "harass" and "intimidate" are well-defined, and that the inclusion of "substantial emotional distress" helps "reduce, rather than exacerbate, any vagueness concerns." Opp'n 29. But the government overlooks the fact that courts only reject constitutional challenges to the words "harass" and "intimidate" by construing those words to encompass only threats of violence or speech intended to cause fear of bodily harm. *See Virginia v. Black*, 538 U.S. 343, 360 (2003) ("Intimidation in the constitutionally proscribable sense of the word is a type of true threat," where the speaker intends to place the victim "in fear of bodily harm or death"); *Sryniawski*, 48 F.4th at 588 (same).

Indeed, most of the cases cited by the government reasoned that prior versions of the statute were not vague because they were limited to threats causing or intending to cause fear of physical injury. *See United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015) (the statute is not vague because to violate the statute one must "intend to cause victims serious harm"); *United States v. Shrader*, 675 F.3d 300, 311 (4th Cir. 2012) (observing that "harass" and "intimidate"

8

are listed with "kill" and "injure," and noting that "Congress often uses multiple words with overlapping meaning to capture a broad swath of conduct" (quotation omitted)); *United States v. Bowker*, 372 F.3d 365, 381 (6th Cir. 2004) ("Michigan's harassment definition also requires that the conduct cause a reasonable individual to suffer emotional distress, but the federal statute requires conduct that causes a fear of death or serious bodily injury."). The one outlier, *Osinger*, also involved physical harassment where the defendant physically approached the victim at a new residence after she moved to escape him. 753 F.3d at 941. At least one other court has treated this type of physical conduct as distinct from the speech threats proscribed by Section 2261A. *See Sryniawski*, 48 F.4th at 588.

Indeed, applying the government's definition of harassment and intimidation, Section 2261A proscribes any repeated speech or conduct intended to cause substantial emotional distress, without limitation. A teacher could be prosecuted for reiterating to parents that their child's behavior in her class is unacceptable and will not be tolerated. A network producer could be prosecuted for telling a screenwriter, "For the thousandth time, no—we hate your work. I would suggest you refrain from sending another script, or there will be professional consequences." When an estranged mother contacts her daughter once a year to attempt to reestablish contact, the mother could be prosecuted for reaching out and the daughter could be prosecuted for telling her mother never to reach out again—or else. The possibilities are indeed endless—and for that reason Count Two is unconstitutionally vague.

## CONCLUSION

For the foregoing reasons, this Court should grant Ms. Blackwood's motions to suppress and dismiss, and grant such further relief as the Court may deem just and proper.

9

Dated: February 24, 2023
      New York, New York

                                           Respectfully submitted,

                                           SHER TREMONTE LLP

                                           /s/Michael Tremonte
                                           Michael Tremonte
                                           Anna Estevao
                                           90 Broad Street, 23rd Floor
                                           New York, New York 10004
                                           T: (212) 202-2600
                                           F: (212) 202-4156
                                           mtremonte@shertremonte.com

                                           *Attorneys for Sakoya Blackwood*