UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                          22 Cr. 460 (JMF)

SAKOYA BLACKWOOD,

                Defendant.
                                         Plea
------------------------------x

                                         New York, N.Y.
                                         March 28, 2023
                                         11:20 a.m.

Before:


                    HON. JESSE M. FURMAN,


                                         District Judge

                           APPEARANCES

DAMIAN WILLIAMS
        United States Attorney for the
        Southern District of New York
BY:  ADAM S. HOBSON
        Assistant United States Attorney

SHER TREMONTE LLP
        Attorneys for Defendant
BY:  ANNA MARIA ESTEVAO
        MICHAEL TREMONTE

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your name for

3     the record.

4          MR. HOBSON:  Good morning, your Honor.  Adam Hobson

5     for the government.

6          THE COURT:  Good morning.

7          MS. ESTAVO:  Good morning.  Anna Maria Estavo and

8     Michael Tremonte for Sequoia Blackwood who is seated to my

9     left.

10          THE COURT:  Good morning to all of you.

11          I've been informed that Ms. Blackwood wishes to change

12     her plea and plead guilty to Count Two of the indictment, 22

13     Cr. 460, which charges her with cyberstalking in violation of

14     18 U.S. Code Sections 2261A(2)(B) and 2.

15          Is that correct, Ms. Estavo?

16          MS. ESTAVO:  That's correct.

17          THE COURT:  Ms. Blackwood, before I accept your

18     guilty plea, I need to ask you certain questions to ensure that

19     you are pleading guilty because you are in fact guilty and not

20     for some other reason, to ensure that you understand the rights

21     that you would be giving up by pleading guilty, and to ensure

22     that you understand the potential consequences of your

23     guilty plea.

24          It is critical that you understand each question

25     before you give me an answer.  So if there is any question you

1    don't understand, please let me know, and either your lawyers

2    or I can explain it to you more fully.  And if at any point you

3    wish to speak to your lawyers for any reason, let me know.  And

4    I'm happy to give you however much time you need to speak with

5    them.

6              Do you understand all of that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  With that, if you could please rise and

9    raise your right hand so that Ms. Smallman can administer the

10   oath to you.  That would be great.

11             (Defendant sworn)

12             THE COURT:  You may be seated.

13             You are now under oath which means that if you answer

14   any of my questions falsely, you may be subject to prosecution

15   for the separate crime of perjury.

16             Do you understand that?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Can you please state your full name.

19             THE DEFENDANT:  Sakoya Blackwood.

20             THE COURT:  And how old are you?

21             THE DEFENDANT:  Thirty-four.

22             THE COURT:  How far did you go in school?

23             THE DEFENDANT:  I graduated high school.

24             THE COURT:  Have you ever been treated or hospitalized

25   for any type of mental illness?

1                THE DEFENDANT:  No.

2                THE COURT:  Are you now or have you recently been

3       under the care of a doctor or mental health professional such

4       as a psychiatrist or psychologist?

5                THE DEFENDANT:  No.

6                THE COURT:  Have you ever been treated or hospitalized

7       for any type of addiction, including drug or alcohol addiction?

8                THE DEFENDANT:  No.

9                THE COURT:  In the last 48 hours, have you had any

10      alcohol, drugs, pills, or medicine?

11               THE DEFENDANT:  Prescription medication.

12               THE COURT:  When was that?

13               THE DEFENDANT:  Last night.  I was prescribed by the

14      MDC.

15               THE COURT:  Can you tell me what the medication was.

16               (Defendant and counsel conferred)

17               MS. ESTAVO:  My understanding is that she has received

18      some mental health treatment from the MDC and has been

19      prescribed some medication with respect to that.  However, it's

20      nothing so serious as to affect her ability to understand the

21      proceedings.

22               (Defendant and counsel conferred)

23               THE COURT:  Is that correct, Ms. Blackwood?

24               THE DEFENDANT:  Yes.

25               THE COURT:  So just to go back, you have received

1    mental health treatment in the recent past?

2              Is that correct?

3              THE DEFENDANT:  Correct.

4              THE COURT:  Anything about either the treatment or the

5    reasons for that treatment that would affect your ability to

6    understand what's happening here today?

7              THE DEFENDANT:  No.

8              THE COURT:  The medication that you took last night,

9    does that have any effect on your ability to understand what's

10   happening here today?

11             THE DEFENDANT:  No.

12             THE COURT:  Do you understand what's happening here

13   today?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Is your mind clear today?

16             THE DEFENDANT:  Yes.

17             THE COURT:  All right.  Ms. Estavo, you and

18   Mr. Tremonte have discussed this matter with Ms. Blackwood?

19             MS. ESTAVO:  Yes, we have.

20             THE COURT:  In your judgment, does she understand the

21   rights that she would be giving up by pleading guilty?

22             MS. ESTAVO:  Yes, your Honor.

23             THE COURT:  In your judgment, is she capable of

24   understanding the nature of these proceedings?

25             MS. ESTAVO:  Yes, she is.

1          THE COURT:  Does either counsel have any doubt as to

2     Ms. Blackwood's competence to plead guilty at this time?

3          MR. HOBSON:  No, your Honor.

4          MS. ESTAVO:  No, your Honor.

5          THE COURT:  On the basis of Ms. Blackwood's responses

6     to my questions, my observations of her demeanor here in open

7     court, and the representations of counsel, I find that she is

8     fully competent to enter an informed plea of guilty at this

9     time.

10          Ms. Blackwood, have you received a copy of the

11     indictment, 22 Cr. 460 which contains the charge to which you

12     intend to plead guilty?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Did you read it?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Did you have enough time to discuss the

17     charge to which you intend to plead guilty and any possible

18     defenses to that charges with your lawyers?

19          Did you have enough time to do that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Did you do discuss those things?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Have your lawyers explained to you the

24     consequences of entering a guilty plea?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Are you satisfied with their

2     representation of you?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Let me explain now certain rights that you

5     have that you would be giving up by pleading guilty.  Again, if

6     there's anything that you don't understand, lets me know.  And

7     either your lawyers or I will explain it to you more fully.

8          Under the Constitution and laws of the United States,

9     you have a right to plead not guilty to the charges in the

10    indictment.

11         Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  If you did plead not guilty, you would be

14    entitled to a speedy and public trial by a jury on those

15    charges.

16         Do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  At that trial, you would be presumed to be

19    innocent, and you would not be required to prove that you were

20    innocent.  Instead, the government would be required to prove

21    your guilt by competent evidence beyond a reasonable doubt

22    before a jury could find you guilty.

23         Do you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  In order to find you guilty, a jury of 12

1   people would have to agree unanimously that you were guilty.

2           Do you understand that?

3           THE DEFENDANT:  Yes.

4           THE COURT:  At that trial and at every stage of your

5   case, you would be entitled to the assistance of a lawyer.  And

6   if you could not afford a lawyer, one would be appointed to

7   represent you free of cost at public expense.

8           Do you understand that?

9           THE DEFENDANT:  Yes.

10          THE COURT:  During a trial, the witnesses for the

11  government would have to come to court and testify in your

12  presence, and your lawyer would have an opportunity to

13  cross-examine or question them.

14          You would also have an opportunity to present evidence

15  on your own behalf and have the right to have subpoenas issued

16  to compel witnesses to come to court and testify in your

17  defense.

18          Do you understand all of that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Now, I should say you would also have the

21  right to object to any evidence that the government offered

22  against you at a trial.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  At trial, you would also have the right to

1    testify on your own behalf.  But you would have the right not

2    to testify as well.  If you chose not to testify, then no one,

3    including the jury, could draw any inference or suggestion of

4    guilt from the fact that you did not testify.

5            Do you understand that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Before trial, you would have an

8    opportunity, if you have not waived it, to seek suppression or

9    exclusion of evidence that the government would use against you

10   at a trial.

11           Do you understand that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  And in fact, in this case, you actually

14   have made a motion to suppress certain evidence that the

15   government might use against you at a trial.

16           Do you understand that?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Do you understand that by pleading guilty,

19   you are basically waiving, giving up your right, to challenge

20   that evidence and agree to plead guilty without a ruling on

21   that motion?

22           Do you understand that?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Do you understand that that motion would

25   then be denied as moot because of your guilty plea?

1                Do you understand that?

2                THE DEFENDANT:  Yes.

3                THE COURT:  If you were convicted at a trial, you

4     would have the right to appeal that verdict and any pretrial

5     rulings that I have made.

6                Do you understand that?

7                THE DEFENDANT:  Yes.

8                THE COURT:  Let me also mention, although I was going

9     to when we got to the plea agreement, I understand in the plea

10    agreement that you've reached with the government, that you've

11    agreed to withdraw your motion to dismiss the indictment,

12    another motion that your lawyer has filed on your behalf.

13               Do you understand that?

14               THE DEFENDANT:  Yes.

15               THE COURT:  Do you understand that by pleading guilty,

16    you are withdrawing and giving up that motion and not,

17    therefore, arguing that the charges or, in particular, the

18    charge to which you're pleading guilty is defective?

19               Do you understand that?

20               THE DEFENDANT:  Yes.

21               THE COURT:  So that motion will also be denied as a

22    result of your guilty plea.

23               Do you understand that?

24               THE DEFENDANT:  Yes.

25               THE COURT:  Again, do you understand that if you were

1   convicted at a trial, you would have the right to appeal that

2   verdict and any pretrial rulings I may make in connection with

3   your case, including the rulings that I would have made in

4   connection with those motions?

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  If you plead guilty, you will also have to

8   give up your right not to incriminate yourself because I may

9   ask you questions about what you did in order to satisfy myself

10  that you are guilty and you will have to admit and acknowledge

11  your guilt.

12         Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  If you plead guilty and if I accept your

15  guilty plea, you will give up your right to a trial and the

16  other rights that we have discussed, other than your right to a

17  lawyer which you keep whether or not you plead guilty.

18         But there will be no trial, and I will enter a

19  judgment of guilty and sentence you on the basis of your

20  guilty plea, after I have received a presentence report

21  prepared by the probation department and any submissions that I

22  get from the lawyers.

23         There will be no appeal with respect to whether you

24  did or did not commit the offense, with respect to whether the

25  offense to which you're pleading guilty is a proper offense, or

1    with respect to whether the government could use the evidence

2    that it has against you.

3            Do you understand all of that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Even now as you are entering this plea,

6    you have the right to change your mind and plead not guilty and

7    to go to trial on all of the charges in the indictment.

8            Do you understand that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Do you understand each and every one of

11   the rights that we have just discussed?

12           THE DEFENDANT:  Yes.

13           THE COURT:  And are you willing to give up your right

14   to a trial and the other rights that I have explained to you to

15   plead guilty?

16           THE DEFENDANT:  Yes.

17           THE COURT:  All right.  Do you understand that you are

18   charged in Count Two can cyberstalking in violation of 18 U.S.

19   Code 2261A and Section 2?

20           Do you understand that that's the charge?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Mr. Hobson, would you please state the

23   elements of that offense.

24           MR. HOBSON:  Yes, your Honor.  Cyberstalking has three

25   elements:  First, that the defendant used an interactive

1   computer service or electronic communication service or

2   electronic communicate system of interstate commerce, or any

3   other facility of interstate or foreign commerce, to engage in

4   a course of conduct.

5          Second, the defendant's course of conduct caused,

6   attempted to cause, or would reasonably be expected to cause

7   substantial emotional distress to another person; and third,

8   that the defendant did so with an attempt to harass or

9   intimidate another person.

10         In addition, the defendant would have to prove by a

11  preponderance of the evidence that venue is appropriate in the

12  Southern District of New York.

13         THE COURT:  Ms. Blackwood, do you understand that if

14  you were to go to trial, the government would have to prove

15  those first three elements beyond a reasonable doubt before a

16  jury could find you guilty of this crime?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Do you understand that the government

19  would also have to prove what Mr. Hobson mentioned at the end,

20  venue?  Namely, that something in connection with the crime

21  occurred here in the Southern District of New York.  But it's

22  burden on that would be only by a preponderance of the

23  evidence.

24         Do you understand that?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Let me tell you about the maximum possible

2    penalties for this crime.  And by "maximum" I mean the most

3    that could be imposed upon you.  It doesn't mean that that is

4    the sentence that you will receive, but you have to understand

5    that by pleading guilty, you're exposing yourself to a

6    combination of punishments up to the statutory maximums.

7          Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  First let me tell you about the possible

10   restrictions on your liberty.  The maximum term of imprisonment

11   for this crime is five years which could be followed by up to

12   three years of supervised release.

13         Supervised release means that you would be subject to

14   supervision by the probation department.  There would be rules

15   of supervised release, supervision, that you would be required

16   to follow.

17         And if you violated any of those rules, you could be

18   returned to prison without a jury trial and without credit for

19   either the time spent on your underlying sentence or time spent

20   on post-release supervision.

21         Do you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  You should understand that there is no

24   parole in the federal system which means if you are sentenced

25   to prison, you would not be released early on parole.  There is

1    a limited opportunity to earn credit for good behavior, but if

2    you are sentenced to prison, you would have to serve at least

3    85 percent of the time to which you were sentenced.

4              Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  In addition to those restrictions on your

7    liberty, the maximum possible punishment also includes certain

8    financial penalties.  First, the maximum possible fine is the

9    greatest of $250,000 or twice the gross pecuniary or financial

10   gain derived from the offense or twice the gross pecuniary or

11   financial loss to someone other than you as a result of the

12   offense, whichever is greatest.  Second, I can order

13   restitution to any person or entity injured as a result of your

14   criminal conduct.

15             Third, I can order you to forfeit all property derived

16   from the offense or used to facilitate or commit the offense.

17   And finally, I must order a mandatory special assessment of

18   $100.

19             Do you understand that those are the maximum possible

20   penalties?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Are you a citizen of the United States,

23   Ms. Blackwood?

24             THE DEFENDANT:  No.

25             THE COURT:  Do you understand that as a result of your

1   guilty plea, that there may be adverse effects on your

2   immigration status?

3         For instance, you may be detained by immigration

4   authorities following the completion of any criminal sentence,

5   you may be removed from the United States, you may be denied

6   admission into the United States in the future, and you may be

7   denied citizenship in the United States.

8         Do you understand that those are among the potential

9   consequences of a guilty plea?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Have you discussed those issues, the

12   immigration consequences of a guilty plea, with your lawyers?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Do you understand that as a result of a

15   guilty plea, you may also lose certain valuable civil rights in

16   this country, to the extent that you have them or otherwise

17   could obtain them now such as the right to vote, the right to

18   hold public office, the right to serve on a jury, and the right

19   to possess any kind of firearm?

20        Do you understand that?

21        THE DEFENDANT:  Yes.

22        THE COURT:  Are you serving any other sentence or

23   being prosecuted in any other court at this time?

24        THE DEFENDANT:  No.

25        THE COURT:  Do you understand that if your lawyers or

1     anyone else has attempted to predict what your sentence will be

2     in this case, that their predictions could be wrong?

3                Do you understand that?

4                THE DEFENDANT:  Yes.

5                THE COURT:  It's important for you to understand that

6     no one, not your lawyers, not the government's lawyers, no one

7     can give you any promise or assurance of what sentence you will

8     receive as your sentence will be determined by me and by me

9     alone.  And I'm not going to do that today.

10                Instead, I will wait until the probation department

11     prepares its presentence report.  I'll do my own independent

12     calculation of how the United States Guidelines apply to your

13     case.  I'll consider any possible departures from the

14     guidelines range.  I will consider any submissions I get from

15     the lawyers.  And ultimately I will consider the factors that

16     govern sentencing that are set forth in a statute, 18 U.S. Code

17     Section 3553(a).

18                I'll do all of that by determining and imposing an

19     appropriate sentence.

20                Do you understand all that?

21                THE DEFENDANT:  Yes.

22                THE COURT:  Have you discussed that process, the

23     sentencing process, with your lawyers?

24                THE DEFENDANT:  Yes.

25                THE COURT:  Do you understand that even if your

1   sentence is different from what your lawyers or anyone else has

2   told you what it might be, even if it is different from what

3   you expect or hope it to be, even if it is different from what

4   may be in the plea agreement, that you will be still be bound

5   by your guilty plea and you will not be allowed to withdraw

6   your guilty plea?

7           Do you understand that?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Now, I understand that there is a written

10   plea agreement that you and your lawyers have entered into with

11   the lawyers for the government.

12           Is that correct?

13           THE DEFENDANT:  Yes.

14           THE COURT:  I have an original letter plea agreement

15   here from Ms. Bracewell and Mr. Rodriguez to your lawyers,

16   Mr. Tremonte and Ms. Estavo, dated March 17, 2023.  I'll mark

17   it as Court Exhibit 1 and provide it to the government to

18   retain in its possession after this proceeding.

19           Turning to the last page, if you can see it from

20   there, is that your signature there on the last page?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Before you signed the plea agreement, did

23   you read it?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Before you signed it, did you discuss it

1    with your lawyers?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Before you signed it, did they explain it

4    to you and answer any questions you had about the plea

5    agreement?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Before you signed it, did you fully

8    understand the plea agreement?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Now, one of the features of this agreement

11   is that you and the government have agreed, at least in part,

12   on how the United States Sentencing Guidelines apply to your

13   case, although you've also agreed to disagree on part of the

14   sentencing guidelines calculation.

15             Is that correct?

16             THE DEFENDANT:  Yes.

17             THE COURT:  All right.  Do you understand that, first

18   of all, I have my own independent obligation to determine what

19   the correct guidelines range is?

20             I'm not suggesting that I will calculate it the way

21   the government does, the way you do, or maybe I would do it

22   even differently.  But you should understand that however I

23   calculate the sentencing guidelines range and even if I

24   calculate it to be higher than what you or the government

25   calculate it to be, that you would still be bound by your

1    guilty plea and you would not be allowed to withdraw your plea.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  All right.  Now, as I understand it,

5    again, you've agreed to disagree about one particular aspect of

6    the sentencing guidelines calculation.  But you agree not to

7    appeal or basically you agree to live with or accept whatever

8    decision I make on that issue.  And you agree not to appeal or

9    otherwise challenge my determination, my decision, as to that

10   disagreement.

11             Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  Now, another feature of this

14   agreement is that you agree to waive or give up your right to

15   appeal any sentence that is within or below the stipulated

16   guidelines range of 18 to 30 months in prison.

17             That covers the low ends of what you think the

18   guidelines should be all the way to the high end of what the

19   government thinks the guidelines could be.  But the bottom line

20   is that if I were to sentence you to 30 months in prison or

21   anything less than 30 months in prison, you would have no right

22   to appeal or otherwise challenge that sentence.

23             Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Again, I asked you this before, but

1   another provision in this agreement is that you agree to

2   withdraw your motion to dismiss Count Two of the indictment and

3   that in entering this plea, you agree to waive any and all

4   rights to withdraw your plea or to attack your conviction or

5   sentence on direct appeal or otherwise on the ground that the

6   statute that makes it a crime that underlies Count Two is

7   either on its face or, as applied to you unconstitutional,

8   either a violation of the First Amendment, or

9   unconstitutionally vague.

10         Do you understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  Just to be clear, I think it

13   extends only to that it violates the First Amendment or is

14   unconstitutionally vague.  That's what you're giving up, the

15   right to challenge the statute on that ground.

16         Do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Does this written agreement constitute

19   your complete and total understanding of the entire agreement

20   between you and the government?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Has anything been left out of this written

23   plea agreement?

24         THE DEFENDANT:  No.

25         THE COURT:  Other than what is written in this

1     agreement, has anyone made any promise to you or offered you

2     anything in order to plead guilty or to sign the agreement?

3                THE DEFENDANT:  No.

4                THE COURT:  Has anyone threatened you or forced you to

5     plead guilty or to sign this agreement?

6                THE DEFENDANT:  No.

7                THE COURT:  Has anyone made a promise to you as to

8     what your sentence in this case will be?

9                THE DEFENDANT:  No.

10               THE COURT:  All right.  Ms. Blackwood, I'd like you

11    now to tell me in your own words what you did that makes you

12    believe that you're guilty of the crime charged in Count Two of

13    the indictment.

14               THE DEFENDANT:  Between April and August of 2022, I

15    sent a series of text messages to an individual knowing that

16    those messages were likely to cause substantial emotional

17    distress.  I did so with the intent to harass this individual.

18    I knew what I was doing was wrong, and I am deeply sorry.

19               THE COURT:  All right.  When you did these things,

20    were you located in either Manhattan or the Bronx or somewhere

21    in the Southern District of New York?

22               THE DEFENDANT:  Yes.

23               THE COURT:  All right.  Ms. Estavo, are you aware of

24    any valid defense that would prevail at trial, or do you know

25    of any reason why Ms. Blackwood should not be permitted to

1    plead guilty?

2          MS. ESTAVO:  No, your Honor.

3          THE COURT:  Mr. Hobson, are there any additional

4    questions that you think I should ask of Ms. Blackwood?

5          MR. HOBSON:  No, your Honor.

6          THE COURT:  Could you please proffer briefly what the

7    government's evidence would be and what it would show if

8    Ms. Blackwood were to go to trial.

9          MR. HOBSON:  Yes, your Honor.  The proof at trial

10   would show that from about March 2022 to August 2022, the

11   defendant harassed and intimidated the victim by sending text

12   messages and other electronic communications threatening to

13   publicly release sexually explicit material relating to the

14   victim.

15         The proof at trial would include the testimony of the

16   victim, evidence from the defendant's and the victim's

17   electronic devices, IP property address records, and records

18   from social media and Google accounts that the defendant used.

19         THE COURT:  Do both counsel agree that there is a

20   sufficient factual basis for a guilty plea to Count Two?

21         MR. HOBSON:  Yes, your Honor.

22         MS. ESTAVO:  Yes, your Honor.

23         THE COURT:  Does either counsel know of any reason

24   that I should not accept the defendant's plea of guilty to

25   Count Two?

1          MR. HOBSON:  No, your Honor.

2          MS. ESTAVO:  No, your Honor.

3          THE COURT:  Ms. Blackwood because you have

4    acknowledged that you are guilty as charged in Count Two of the

5    indictment; because I am satisfied that you know your rights,

6    including your right to go to trial; that you are aware of the

7    consequences of your plea, including the withdrawal or denial

8    of the two motions that you have filed and the sentence that

9    may be imposed in connection with your plea; and because I find

10   that you are knowingly and voluntarily pleading guilty, I

11   accept your guilty plea and enter a judgment of guilty on Count

12   Two of the indictment.

13         The probation department will want to interview you in

14   connection with its presentence report.  If you choose to speak

15   with the probation department, it is critical that anything you

16   say is truthful and accurate.  Among other things, that report

17   is very important to me in deciding what sentence to impose

18   upon you.

19         Before sentencing, you and your lawyers will have an

20   opportunity to review the report.  I would urge you to review

21   it with care.  And if you find any mistakes in the report or

22   anything that you wish to bring to my attention in connection

23   with sentencing, share that with your lawyers so that they can

24   share it with me in turn.

25         Do you understand that?

1              THE DEFENDANT:  Yes.

2              THE COURT:  Ms. Estavo, Mr. Tremonte, do you wish to

3    be present in connection with any interview?

4              MS. ESTAVO:  Yes, your Honor.

5              THE COURT:  I'll order that no interview take place

6    unless counsel is present.

7              Assuming counsel is available, sentencing will be set

8    for July 6 at 10:00 a.m.

9              Does that time work for the government?

10             MR. HOBSON:  Yes, your Honor.

11             THE COURT:  The defense?

12             MS. ESTAVO:  Yes, your Honor.

13             THE COURT:  All right.  I direct the government to

14   provide the probation department with its factual statement of

15   the offense within seven days.  Defense counsel must arrange

16   for Ms. Blackwood to be interviewed by the probation department

17   within the next two weeks.

18             In accordance with my individual rules and practices,

19   defense submissions with respect to sentencing are due two

20   weeks prior to sentencing and the government's submission is

21   due one week prior to sentencing.

22             I trust that I don't need to say this, but obviously

23   you should address the disagreement with respect to the

24   sentencing guidelines calculation in your sentencing

25   submissions.

```
 1              Mr. Hobson, do you have any idea if the victim in this
 2    case is likely to wish to be heard at sentencing in some form
 3    or fashion?
 4              MR. HOBSON:  No, your Honor.  We did notify the victim
 5    of the plea.  He did not wish to be present for the plea.  I
 6    don't know yet if he's going to be present at sentencing.
 7              THE COURT:  All right.  If you learn that he does
 8    intend to be present, please let us know since it may have
 9    bearing on the length of the proceeding and scheduling.  But
10    obviously you should ensure that he knows of his right to be
11    heard in connection with sentencing.
12              Anything else from either side?  Mr. Hobson?
13              MR. HOBSON:  No, your Honor.
14              THE COURT:  Ms. Estavo?
15              MS. ESTAVO:  No, your Honor.  Thank you.
16              THE COURT:  Obviously the motions are both now denied
17    as moot.  I will enter an order to that effect on the docket.
18    With that, we are adjourned.  And with that, I wish you both a
19    good day.
20              (Adjourned)
21
22
23
24
25
```