N7J3BLAS

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        22 Cr. 460 (JMF)

5   SAKOYA BLACKWOOD,

6              Defendant.

7   ------------------------------x    Sentencing

8                                      New York, N.Y.
                                       July 9, 2023
9                                      10:00 a.m.

10

    Before:
11
                      HON. JESSE M. FURMAN,
12
                                       District Judge
13

14                      APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    JUSTIN V. RODRIGUEZ
17       Assistant United States Attorney

18  SHER TREMONTE, LLP
         Attorneys for Defendant
19  MICHAEL TREMONTE
    ANNA M. ESTEVAO

20

21

22

23

24

25

N7J3BLAS

|    |                                                                  |
|----|------------------------------------------------------------------|
| 1  | THE DEPUTY CLERK:  United States v. Blackwood, 22 Cr.             |
| 2  | 460.                                                             |

Counsel, please state your name for the record.

MR. RODRIGUEZ:  Good morning, your Honor.  Justin
Rodriguez for the United States.

THE COURT:  Good morning, Mr. Rodriguez.

MS. ESTEVAO:  Good morning.  Anna Estevao and Michael
Tremonte for Ms. Blackwood, who is seated to my left.

THE COURT:  Good morning to the three of you.

We are here for purposes of sentencing.  In
preparation for today's proceeding, I have received the
presentence report dated June 14, 2023.  I've also received and
reviewed the following additional submissions:  The excellent
defense submission dated July 5, as well as the attachments to
that submission, which include letters addressed to me from the
defendant's mother, sister, and various other friends and
family, a forensic psychological evaluation, various
certificates from the MDC and Columbia program, a prima facie
determination from USCIS, and records relating to defendant's
daughter, and the government's submission dated July 12, 2023.

First, to the extent the defense submission was
submitted in redacted form, Mr. Rodriguez, can you confirm
you've received an unredacted copy.

MR. RODRIGUEZ:  Yes, your Honor.

THE COURT:  Any additional submissions that I should

1  have received beyond those that I've listed?

2            MR. RODRIGUEZ:  No, your Honor.

3            MS. ESTEVAO:  No, your Honor.

4            THE COURT:  I can't remember if I've already approved

5  the redactions.  I think I did temporarily and said I would

6  indicate today whether they are approved permanently.  I have

7  reviewed them.  I appreciate the care that defense counsel made

8  to ensure they were narrowly tailored to the reasons that would

9  justify redactions, and I do approve them on a permanent basis.

10 That submission will be kept under seal.  In the event of an

11 appeal, it is available to counsel without further application

12 to me.

13            Before I proceed any further, Mr. Rodriguez, I take it

14 from the presentence report that the victim, at least through

15 counsel, is aware of today's proceeding and does not intend to

16 appear or be heard.  Is that correct?

17            MR. RODRIGUEZ:  That's correct, your Honor.

18            THE COURT:  Ms. Estevao, have you reviewed the

19 presentence report?

20            MS. ESTEVAO:  Yes, I have.

21            THE COURT:  Have you discussed it with Ms. Blackwood?

22            MS. ESTEVAO:  Yes.

23            THE COURT:  Putting aside the guidelines for a moment.

24 We'll turn to that shortly.  Any objections to its factual

25 accuracy?

N7J3BLAS

| 1 | MS. ESTEVAO:  No, your Honor. |

1           MS. ESTEVAO:  No, your Honor.

2           THE COURT:  Ms. Blackwood, have you reviewed the

3    presentence report?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  Did you discuss it with your lawyers?

6           THE DEFENDANT:  Yes, I have.

7           THE COURT:  Did you have enough time to discuss the

8    report with them and to discuss anything that you would wish to

9    bring to my attention in connection with your sentencing?  Did

10   you have enough time to do that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Mr. Rodriguez, did you review the

13   presentence report?

14          MR. RODRIGUEZ:  Yes, your Honor.

15          THE COURT:  Any objection to its factual accuracy?

16          MR. RODRIGUEZ:  No, your Honor.

17          THE COURT:  Hearing no objection, I'll adopt the

18   factual recitations set forth in the presentence report, which

19   will be made part of the record in this matter and also kept

20   under seal.  In the event of an appeal, counsel on appeal may

21   have access to the sealed report as well without further

22   application to me.

23          Turning to the guidelines, as counsel certainly know,

24   I am not bound by the guidelines, but I do have to begin by

25   accurately calculating them and then consider that range in

N7J3BLAS

1    imposing an appropriate sentence.

2            In this case there was a plea agreement in which the

3    parties stipulated to a particular calculation in part of the

4    sentencing guidelines, though the parties agreed to disagree

5    with respect to one aspect of the calculation, namely, whether

6    the enhancement in Section 2A6.2(b)(1)(E) should be applied or

7    whether it would constitute impermissible double counting.

8            First, am I correct that the calculation in the

9    presentence report is in accord with the government's view of

10   the guidelines, which is to say that there is no objection to

11   that calculation except with respect to the enhancement in

12   Subsection (b)(1)(E)?

13           Is that correct, Mr. Rodriguez?

14           MR. RODRIGUEZ:  Yes, your Honor.

15           MS. ESTEVAO:  Yes, your Honor.

16           THE COURT:  As for that enhancement, I agree with the

17   government about its applicability.  The Second Circuit has

18   repeatedly held that "a district court calculating a guidelines

19   sentence may apply multiple guidelines provisions based upon

20   the same underlying conduct where that is the result clearly

21   intended by Congress and the sentencing commission.  While such

22   calculations may involve 'double counting' in a literal sense,

23   they do not involve impermissible double counting." *United*

24   *States v. Maloney*, 406 F.3d 149, 152 (2d Cir. 2005).

25           The circuit has further instructed "that double

1   counting is permissible in calculating a guidelines sentence

2   where each of the multiple guidelines sections applicable to a

3   single act serves a distinct purpose or represents a discrete

4   harm."  Same case, page 153.

5          Those principles are fatal to the defendant's argument

6   here.  First, neither the guideline provision nor its

7   associated commentary contains any proscription against the use

8   of the two-level enhancement under Subsection (b)(1)(E).  To

9   the contrary, one could read the combination of application

10  notes 1 and 3 to strongly suggest that the commission was aware

11  of the so-called double counting issue and contemplated it.

12  Thus, while it may arguably be double counting, it does not

13  qualify as "impermissible double counting."

14         Second, as the government points out, 2A6.2 targets

15  three separate crimes -- interstate domestic violence in

16  violation of 18 U.S. Code Section 2261; interstate stalking,

17  the offense here, in violation of Section 2261A; and interstate

18  violation of a protection order in violation of Section 2262 --

19  and lumps them within the rubric of stalking or domestic

20  violence offenses.  Only one of this trio, namely 2261A,

21  contains as an element a pattern of activity involving

22  stalking.  Thus, the most logical conclusion is the base

23  offense level accounts for the general nature of the offense of

24  conviction, but does not account specifically for the pattern

25  of activity involving stalking.  The two-level enhancement in

N7J3BLAS

Subsection (b)(1)(E) therefore "bridges the gap and accounts

for this feature of the defendant's crime.  This is an

endorsement of the enhancement, not a prohibition.  That is

single counting, not double counting."  *United States v. Fiume*,

708 F.3d 59, 62 (1st Cir. 2013), which rejected a nearly

identical argument with respect to the enhancement in

2A6.2(b)(1)(A); *see also United States v. Two Moons*, 486

F.App'x 628, 629 (9th Cir. 2012), which rejected a nearly

identical argument with respect to the enhancement in

Subsection (b)(1)(D).

For the reasons set forth in the First Circuit's

decision in *Fiume*, I reject the defense argument here.

So based on that ruling, the parties' agreements, the

absence of any other objection, and my independent evaluation

of the sentencing guidelines, I accept and adopt the guidelines

calculation set forth in the presentence report, that is using

the November 2021 edition of the guidelines which remains in

effect.

I find the total offense level is 17, the criminal

history category is I, and the guidelines range is 24 to 30

months' imprisonment with a supervised release range of one to

three years, and a fine range of 10,000 to $95,000.

Turning to the question of departures.  In the plea

agreement I believe both parties agreed not to seek a departure

from the guidelines range that I just calculated.

N7J3BLAS

1          Is that correct, Mr. Rodriguez?

2          MR. RODRIGUEZ:  Yes, your Honor.

3          MS. ESTEVAO:  Yes, your Honor.

4          THE COURT:  I've nevertheless considered whether there

5    is any basis for a departure that is within the guidelines

6    system and as distinct from what has come to be known as a

7    variance, and find there are no grounds that would call for a

8    departure.

9          With that, I'll hear first from counsel and then from

10   Ms. Blackwood if she wishes to say anything before I sentence

11   her, beginning with the government.

12         Note I have read both of your very helpful sentencing

13   submissions, so you don't need to repeat anything you've

14   already submitted to me in writing.  But obviously if there's

15   anything that you think would be helpful, that would be great.

16   And I may then have some follow-up questions for you.

17         So Mr. Rodriguez.

18         MR. RODRIGUEZ:  Thank you, your Honor.  I will in fact

19   not repeat everything in my sentencing submission.

20         To start, as I did in my sentencing submission, I do

21   want to acknowledge that Ms. Blackwood does present significant

22   mitigating factors that warrant serious consideration by the

23   Court.  The government does not dispute that.

24         I think of particular note is obviously the effect

25   that her criminal conduct has had on her family is something

1    that the government agrees is worth significant consideration

2    by the Court.

3        I do want to focus my remarks on three aspects of the

4    offense conduct that I think are particularly important here.

5    One, defendant's motivations; two, the duration of the offense

6    conduct; and three, the sophistication of it, because I think

7    these are relevant to several of the factors that the Court has

8    to consider.

9        So, to begin with, I think it should be crystal clear

10   that there was nothing righteous about the defendant's conduct

11   in this case.  There's no evidence that the government is aware

12   of, no public allegations or rumors, that the victim in this

13   case engaged in any kind of criminal abusive conduct.  The

14   government is not aware of anything like that, and I'm not sure

15   there is anything in the record to the contrary.

16       As the defense submission pointed out, Ms. Blackwood

17   contacted a number of different individuals as part of this

18   scheme, and I think what they all had in common is that they

19   are wealthy individuals who one could look at and say there is

20   a good chance they would rather throw money at this problem

21   than report it to the authorities and have to deal with the

22   risk of disclosure that way.

23       Obviously, the victim in this case, after trying to

24   deal with the problem himself, and through his lawyer, went to

25   the authorities.  But I think that's what the people in this

1    case have in common.

2         I submit that if Ms. Blackwood were motivated by some

3    other concern, other than trying to extract an extortion

4    payment, she would have released these materials pretty

5    quickly.  But she didn't.  She kept on holding them from when

6    she got them in March until the day of her arrest in August of

7    last year, because they were her golden ticket.  If she had

8    posted them on the internet or disclosed them or sold them in

9    the way she told the victim she was going to, she would never

10   have been able to actually get the payday that she was hoping

11   she was going to get.  So that's with respect to the

12   defendant's motivations, your Honor.

13        In terms of the impact on the victim in this case,

14   obviously it never got to the point where he had to or gave

15   into the extortionate demands.  He didn't make any sort of

16   payment.  But he did have to live in fear for months that his

17   life would be wrongfully ruined at any minute.  And that is I

18   think significant for the Court to consider.

19        The second aspect of the offense conduct that I think

20   is important for the Court to consider was its duration.  This

21   was not sort of a momentary thing.  This was a very long con

22   that stretched over months.  It started in March, and it didn't

23   end really until the end of the summer when she was arrested.

24   Ms. Blackwood devoted really quite a significant amount of time

25   to this scheme.  She had to have spent many, many hours playing

N7J3BLAS

and portraying these different online personas that she
created, in addition to having to do all the research that was
necessary for this scheme.

As I pointed out in my submission, she somehow
obtained the private cell phone numbers of the victim, one of
the victim's sons, six board members of the victim, as well as
all of the other high-profile men she had reached out to who
ultimately were not victimized.  That must have taken a very
significant amount of time and effort by the defendant.

What's perhaps most troubling about the duration was
there were many times along the way where she could have
stopped.  Most significantly, fairly early on, and this was
before law enforcement got involved, in April, the victim's
lawyer, through the victim and through the apps, sent a letter
to Ms. Blackwood, outlining in fairly specific detail why her
conduct was criminal.  Not wrong, not like you are going to be
civilly sued.  Criminal.  And it's really hard for me to
imagine that we would be here today if Ms. Blackwood had read
that letter, and her reaction had been, I'm in too deep, I got
to stop.  That is not what happened.  She got this letter, and
doubled down and tripled down and really fought back and
continued and insisted on maintaining her scheme.

I think that's important, not only with respect to the
seriousness of the offense, but in order for the Court's
sentence to promote respect for the law.  She was quite

1  literally confronted with the criminal laws she was violating,

2  and decided to blow right past sort of any admonition and

3  continue to keep going, and I think that's quite significant.

4         The last thing, your Honor, is sort of the

5  sophistication of the scheme.  And I've hinted at this already.

6  Somehow she got all of these people's private cell phone

7  numbers.  I haven't -- I don't think law enforcement has tried

8  to sort of reconstruct how one might do this in any sort of

9  scientific way.  But based on the research we've done, it is

10  just not really possible to do it through Google or a web

11  search.  This must have been activity that was undertaken

12  through the dark web or through other sort of illicit means

13  other than publicly available information.

14         And the last thing about the sophistication, your

15  Honor, is that Ms. Blackwood took pretty significant steps to

16  try and conceal her identity.  She did not use her cell phone

17  that is registered in her name or her family member's name.

18  She used these voice over internet protocol numbers that

19  conceal through multiple layers her true identity and her true

20  location.  And that's in large part what took law enforcement

21  the time it did to actually locate her and put an end to this,

22  rather than being able to do it right away.  It took us several

23  months to peel through all of the layers and actually locate

24  Ms. Blackwood.

25         So those are the aspects of the offense conduct that I

N7J3BLAS

1    wanted to highlight for your Honor.

2         The last thing I wanted to mention was a concern that

3    the victim raised in our discussions, which is what happens

4    when Ms. Blackwood serves whatever sentence the Court imposes,

5    and she decides that she is going to out the victim in some way

6    in retaliation.  As part of this, your Honor, the government

7    seized a number of electronic devices that had the compromising

8    materials on them, but of course we can't be sure that we've

9    gotten everything, and that, when this is all said and done,

10   there is not some other device or electronic storage facility

11   where these communications reside and could be disclosed or

12   that Ms. Blackwood could just announce who the victim was, and

13   people could piece it together based on what happened here.

14        I raise it because I'm not sure there is, for example,

15   a special condition of supervised release that the Court could

16   craft to protect against it.  But I do raise it to say that if

17   any of those things did happen, obviously, all of the facts and

18   circumstances would have to be considered, but it would strike

19   the government as potentially a new offense, and therefore a

20   violation of supervised release.

21        Again, I raise it because it is a concern that the

22   victim raised, and I don't know there is anything else to do

23   about it, other than to note that if it were to happen, it

24   could be met with additional very serious consequences.

25        So with that, your Honor, I'm happy to answer any

N7J3BLAS

1      other questions that the Court has.

2            THE COURT:  Thank you, Mr. Rodriguez.  Very helpful.

3      I do have a couple of questions.

4            First, I don't think in your written submission you've

5      responded to the defense argument that I should vary downward

6      in connection with the zero-point offender amendment that may

7      be adopted as of this November.  Can you tell me your views on

8      that, number one, whether she would qualify if the amendment

9      were to go into effect, and number two, whether I can or should

10      take that into consideration.

11            MR. RODRIGUEZ:  So, your Honor, I have no information

12      to suggest that she has some other offense, which is to say she

13      is not a first-time offender.  I confess, and I apologize, I

14      haven't studied that proposed amendment to see what other, if

15      any, requirements there are to qualify for it, other than not

16      having a prior offense.

17            Obviously it is not yet in effect, and I don't think

18      the Court is proposing to -- the Court's already calculated the

19      guidelines.  But I would just say that it is entirely

20      appropriate for the Court to consider in its weighing of the

21      3553(a) factors all of Ms. Blackwood's history and

22      characteristics, and that would include the fact that this a

23      first-time offense.

24            However, it is a first-time offense, but as I've

25      mentioned, and I'm not going to repeat, it was a long offense,

N7J3BLAS

           and it is one that took a while for her to be apprehended on,

           and it was not a momentary one.

                  But, I think most importantly, yes, of course the

           Court is free to consider that.

                  THE COURT:  Second, do you know anything about the

           disciplinary issues raised in paragraph 8 of the presentence

           report?  The defense submission suggests she was acting in

           self-defense and indicates that the other party has been

           indicted in connection with not that incident, but other acts

           of violence in custody.

                  Do you know anything about that?

                  MR. RODRIGUEZ:  I do not know anything beyond the

           materials that have been presented to the Court.  I think I

           received the same report from the BOP that the defense has.

           I'm not aware of other indictments pending against this person.

                  THE COURT:  I assume you don't have a view on the

           prospects of Ms. Blackwood being allowed to remain in the

           United States, that is to say, prospects of collateral

           immigration consequences and her viability of getting asylum or

           whatever other status here.

                  MR. RODRIGUEZ:  I suppose I would certainly

           acknowledge that that is a very serious issue, and I don't

           think there is anything that prevents the Court from taking

           into account that prospect.  Whether this offense that she has

           pleaded guilty to qualifies, and whether and how immigration

N7J3BLAS

 1    authorities would exercise their discretion, I don't think I am

 2    in a position to have a view on that.

 3        THE COURT:  Finally, I take it you are not seeking

 4    restitution.  I would think that the victim presumably paid

 5    legal fees in connection with the lawyer's involvement, if

 6    nothing else.  But I take it that he is not seeking and not

 7    requesting restitution.  Is that correct?

 8        MR. RODRIGUEZ:  That's correct, your Honor.  We've had

 9    this conversation with the victim's attorney.  The victim is

10    obviously well counseled and well I think versed in the

11    possibilities here, and there has been no request from the

12    victim for legal fees or any other restitution.

13        THE COURT:  Thank you.

14        Ms. Estevao, let me turn to you.

15        MS. ESTEVAO:  Thank you, and we appreciate that the

16    Court paid careful attention to our written submissions, so I

17    will try not to repeat myself.

18        To start, to state the obvious, Ms. Blackwood has had

19    the decks stacked against her since very early in life.  She

20    has routinely suffered abuse, and we're of course not offering

21    that as an excuse in any way.  She understands that no matter

22    what happened to her in her life, or whatever trauma that she

23    suffered, that does not constitute an excuse.

24        But I think it helps us understand and think about

25    accountability differently, and who we hold accountable and how

N7J3BLAS

we hold them accountable is different when they've gone through the kind of struggles that Ms. Blackwood has.

And very briefly, because I know it's in our written submission, she was shuffled among family members at a very early age, and sent to the United States to live with an aunt where she was abused and lived in fear of an adult who was supposed to be her caretaker, and her complaints to adults were ignored.  That's how she grew up in life.

And even though she showed tremendous promise as a young girl, she could not pursue her dream of going to college. And instead, she ends up married to, as soon as she graduates from high school, a violent and controlling older man who subjects her to extreme domestic violence.

And Ms. Blackwood exhibited all the classic signs of a victim of domestic violence.  She had difficulty escaping, instead blaming herself and going through the cycle of abuse, and I won't go through all those details which are in our submission, but suffice to say that the abuse was horrific, and it would have been horrific for anyone, and here was visited upon a vulnerable 18-year-old girl.

When she finally did escape, she uprooted her life and moved all the way across the country, continuing this cycle without any sort of help, and continued to rely on older men for financial support.

Now, again, this is not an excuse for her conduct.

1    And at the time of the offense, it was of course over a decade

2    later, and targeted a perfect stranger.  But we offer it to

3    help explain what happened in her life that brought her to that

4    point.

5         And to briefly address the government's submission, we

6    want to add that our own submission was not to avoid

7    responsibility, or shift blame, or claim that her conduct was

8    righteous or acceptable.  It wasn't.  And she knows that.  And

9    to be clear, she takes full responsibility for her wrongful

10    actions and she's deeply remorseful.  And the Court will hear

11    that from her directly later this morning.

12         She knew what she was doing was wrong, and she

13    acknowledges the seriousness of that 100 percent.  Our

14    submission was really just to provide the Court with more

15    context and information about her particular complex psychology

16    and motivations.  Because she's not in the same position as

17    someone who may have engaged in the exact same conduct, but did

18    not suffer the kind of abuse and domestic violence she did, and

19    she's also not in the same exact position as someone who was

20    solely financially motivated.

21         And we're not here to cast blame on the victim.  Of

22    course not.  And we just wanted to provide more explanation

23    about her misguided belief at the time about the victim.

24         And just to the point out some of the undisputed

25    facts, Ms. Blackwood did initiate this conversation by sending

1    a photo of a 17-year-old girl, and the victim responded with

2    eagerness to meet up and engage in explicit conversations.  And

3    the older man did not require much enticing, and appeared to

4    her, to Ms. Blackwood, willing or even eager to have sex with a

5    seemingly very young woman.

6         And as the government points out, the victim appeared

7    to Ms. Blackwood to be someone who was having -- who confused

8    her with someone he had a previous romantic relationship with,

9    and from Ms. Blackwood's perspective, this was just from

10    sending a photo of a 17-year-old girl, and based on this,

11    Ms. Blackwood convinced herself, wrongly, that he had

12    previously had sex with a minor.

13         The victim also gave her the impression, again,

14    wrongly, that he was this woman's financial benefactor, talking

15    about how he paid for her trip to Europe.  When she said she

16    was heavily medicated, he didn't balk.  He sent photos of

17    himself having sex with very young women.  So from her

18    perspective, she's communicating with someone who appeared

19    willing to at least have an affair with a very young woman, and

20    there was a financial power dynamic in place.

21         This is also a unique case, I think, because of the

22    times we live in right now.  And the "Me Too" movement really

23    changed everyone's perspectives about how common sexual abuse

24    is, even among the rich and powerful.  And Ms. Blackwood made

25    the wrong, but educated guess that this powerful person fell

1    into that category.  And this is not a scam that just anyone

2    could have fallen for.

3         Does that make any of this righteous or acceptable or

4    okay?  Of course not.  Of course not.  Okay.  But, we feel that

5    the Court needed to understand the full nature and

6    circumstances of the offense, and we submit that her

7    motivations, her improper motivations, are complex and tied to

8    her history of abuse.

9         We're also not saying her conduct would warrant no

10   punishment.  It's unacceptable.  But we submit that the time

11   that she has spent at the MDC, 11 months, nearly a year, is

12   enough.  And as the Court knows as well as anyone, the MDC is

13   marred with problems.  It is unhygienic, unsafe, dangerous.

14   Just recently the air conditioning has been broken for the past

15   three weeks in the women's unit, and during the heat wave last

16   week in particular, it was unbearable in there.  The women

17   suffered extreme heat, poor ventilation.  They only had

18   steaming hot water to drink.  And that's just the most recent

19   problem.  I don't need to go into all the problems at the MDC.

20        But as the testament to her resilience and true

21   character, she has been spending her time at the MDC

22   productively, actively seeking mental health treatment and

23   domestic violence support groups, completing Columbia

24   University courses, forging relationships with her professors

25   and the MDC psych staff, and she's been doing everything that

1    she can to improve her own mental health from the most

2    inhospitable place imaginable.

3            And most of all, these past 11 months have been so

4    punishing for Ms. Blackwood because she's been separated from

5    her daughter.  And this is what causes her daily anguish and

6    anxiety and what led the MDC to diagnose her with depression,

7    and brings us to our last, but most important point.  Her

8    daughter.

9            And when Ms. Tremonte and I met with her daughter, we

10   were really struck by how incredible this girl is.  She's

11   intelligent and articulate and artistic and just shows so much

12   promise and potential.  And as the Court knows, she is at the

13   top of her class, she scores highly on standardized tests.  She

14   is really destined to go to one of the city's best public high

15   schools.  And she's managed to excel, despite so many

16   challenges, despite having to commute an hour each way to

17   school, despite her family's limited means, and despite her

18   mother being absent for the past year.  She's beating the odds.

19   And it's Ms. Blackwood who set her up for that success.

20   Because, despite all of her faults and all of her shortcomings,

21   Ms. Blackwood is a great mother.  And despite her mental health

22   issues, she's been able to carve this special space to be there

23   for her daughter, a protected place where she can focus and

24   lavish attention and energy and love and nurture her daughter.

25   And her ability to do that has produced a really promising and

1    special young girl.

2            So, somehow despite all of her faults, she is a great

3    mother, and her daughter needs her.  She is resilient,

4    remarkably resilient.  But that resiliency has its limits, and

5    she needs her mom.  She's confused, she's depressed.  As the

6    Court saw from a letter from her counselor, she's been

7    receiving social services and support during this past year.

8    And when we met her, it was apparent how much her daughter

9    needs her and misses her and loves her, and there's a lot of

10   pain there.

11           And we submit that the daughter is the one who has

12   been most impacted by this, and will continue to suffer the

13   consequences if she remains incarcerated.  And I think that's

14   what makes this case so difficult, because we do acknowledge

15   the seriousness of the conduct here.  But we agree with the

16   probation department that all the mitigating factors and the

17   needs of her daughter here justify a time served sentence.

18           And even if there were some reason to think that 11

19   months in the MDC is not sufficient here, we submit that the

20   immigration consequences that she faces are more than

21   sufficient additional punishment.  In case it's not obvious,

22   the immigration issues have been one of the most important

23   aspects of the case from the very beginning.  And we've

24   remained very concerned that she will be deported at the

25   conclusion.  We have requested that ICE lift the detainer

1    that's currently in place, and have not heard back.  So, as far

2    as we know, it remains in place, and she will be transferred to

3    ICE custody.

4             Frankly, she and her daughter just don't know what the

5    future holds, and that uncertainty is punishment enough.  Of

6    course, if she is deported, that result will be catastrophic

7    for both her and her daughter.

8             And even if she's not by some miracle subjected to

9    detention and deportation, the fact is that she will have to

10   spend the next couple of years affirmatively establishing her

11   good moral character, and that should be a meaningful factor

12   for the Court to consider.  Because she will have to go above

13   and beyond complying with any terms of supervised release.  She

14   will have to build up her résumé of good moral character,

15   notwithstanding this conviction.  And I hope that gives the

16   government assurances with respect to what Mr. Rodriguez was

17   explaining before, additional assurances about her future

18   conduct.  And I submit that what she'll have to do in order to

19   establish her good moral character will mean she will not do

20   anything like what Mr. Rodriguez is suggesting.

21            She will have to get a job, seek mental health

22   services, take care of her family.  She plans to apply to the

23   Columbia University Education in Justice Program.  And on that

24   note, she was invited to apply by her professors who went to

25   the MDC and saw how much potential she has and how successful

1   she would be.

2          And while I hesitate to say that any prosecution or

3   conviction ever has a positive effect on anyone, it's clear

4   here that this arrest and incarceration has created a turning

5   point in Ms. Blackwood's life.  This is her first arrest and

6   conviction and loss of liberty.  And it has had a profound,

7   profound impact on her.  She's been forced to see the impact of

8   her poor decisions on the one thing that she cares about the

9   most, the one person she cares about the most.  She knows she

10  has to do better to be there for her, and she knows that, in

11  order to do that, she has to take care of her own mental health

12  first, and set a better example through her own actions.

13         So unless the Court has any other questions, thank

14  you.

15         THE COURT:  Thank you very much, Ms. Estevao.  I

16  appreciate those helpful remarks.

17         Ms. Blackwood, I'll give you an opportunity to say

18  anything you wish to say before I impose sentence.  So if there

19  is anything you do wish to say, this is your opportunity.

20         THE DEFENDANT:  Thank you, your Honor.

21         Your Honor, I'm here to tell you first and foremost

22  that I'm sorry.  I take responsibility for my poor decision

23  making and behavior.  I was in a bad place.

24         I'm sorry to the victim, to this Court, to my family,

25  and most of all my beautiful daughter, who deserved much

1    better.

2         I have spent the past year in jail thinking about how

3    I got here and all the things I could have done differently.

4    It's hard to describe how awful MDC is.  If it wasn't for my

5    daughter, I would have given up a long time ago.  She's my

6    everything and my life.  She is the reason I decided to change

7    my life, to get mental health treatment and support, to go to

8    groups.

9         If I ever get the chance to go home, I promise to do

10   better.  I will do everything I need to do and more.  I will

11   work, go to school, I will set the example that my daughter

12   deserves.  I know she needs me.  But most of all, I need her.

13   She gives me strength to survive.

14        THE COURT:  Thank you, Ms. Blackwood.

15        Counsel, is there any reason why sentence should not

16   be imposed at this time?

17        MR. RODRIGUEZ:  No, your Honor.

18        MS. ESTEVAO:  No, your Honor.

19        THE COURT:  In imposing sentence, I am required to

20   consider the seven factors set forth in 18, U.S. Code, Section

21   3553(a).

22        Since we've been going for a while, in the interest of

23   time, I won't recite them in full.  But suffice it to say I

24   have and will consider all seven of the statutory factors, and,

25   ultimately, I am required to impose a sentence that is

N7J3BLAS

1    sufficient, but no greater than necessary, to comply with the

2    purposes of sentencing set forth in Subsection (a)(2), namely,

3    the need for the sentence imposed to advance the purposes of

4    sentencing, including to reflect the seriousness of the

5    offense, to promote respect for the law, and to provide just

6    punishment for the offense, to afford adequate deterrence to

7    criminal conduct, to protect the public from further crimes of

8    the defendant, and to provide the defendant with needed

9    educational or vocational training, medical care, or other

10   correctional treatment in the most effective manner.

11          I am going to save the suspense and say I am going to

12   follow probation's recommendation and grant the defense request

13   for a time-served sentence.

14          I want to be clear, I agree I think in almost every

15   respect with Mr. Rodriguez's description of the offense, which

16   is to say there was nothing righteous about it in my view at

17   all. And I agree that, given the nature of the conduct, the

18   fact it continued and she didn't publicize the content of the

19   texts, but rather continued to extort the victim for money,

20   that her primary, if not sole, motivation was greed and

21   extortion, rather than some righteous "me too" type of purpose.

22          But, bottom line is I agree wholeheartedly with

23   Mr. Rodriguez's description of the offense and its seriousness,

24   the effect on the victim, its the duration and sophistication

25   of the offense, and how many offramps Ms. Blackwood had during

N7J3BLAS

1    the lengthy time she committed it.

2          Having said that, there are several reasons I think a

3    time-served sentence is appropriate here.  First, I do agree

4    that a variance with the zero-point offender amendment is

5    appropriate.  There are some exclusions from it, but on my

6    reading of the amendment, none apply here, which is to say, as

7    of November, assuming that amendment were adopted,

8    Ms. Blackwood would be entitled to a two-point reduction in her

9    offense level.  If she were facing a longer sentence, I might

10   well have adjourned sentencing until after November when that

11   amendment would then be presumably in effect.  But, given the

12   circumstances here, I think that would be unjust and

13   inappropriate.  But I think it is appropriate to give her

14   credit, and the benefit of what I think is a well-justified

15   amendment that I assume will be enacted.

16         So that to begin with would result in a guidelines

17   range of 18 to 24 months, and I will take that into

18   consideration.

19         Second, as probation and even the government

20   acknowledges, there are several significant mitigating

21   circumstances here that I think are powerfully summarized in

22   and set forth in the excellent defense submission and

23   Ms. Estevao's very helpful remarks today.

24         First, the extensive history of physical, sexual and

25   emotional abuse and the impact on Ms. Blackwood's mental

health.  I agree that does not excuse her conduct.  I've

already mentioned the seriousness of that conduct, but it is

important context for it.

Second, the collateral consequences on Ms. Blackwood's

family, especially her daughter.  And given how well her

daughter had been doing and I hope is continuing to do, that is

certainly a credit to Ms. Blackwood's motherhood, and I hope

that she can going forward be a better role model for her

daughter, and it doesn't derail her daughter's success and

progress.

Third, Ms. Blackwood's rehabilitation and conduct

while in custody, the one disciplinary incident aside, and I

will give Ms. Blackwood the benefit of the doubt on that score

with respect to the explanation given in the defense

submission.  Her participation in classwork, most notably in

the Columbia program, suggests a commitment to doing better

going forward.  And I hope on that score that, if permitted to

remain in the United States, that Ms. Blackwood does apply for,

and in fact I will in short order require this as a condition

of supervised release, does apply for and does continue to

participate in that Columbia program.

Finally, the risk of immigration consequences.  And I

don't purport to know how likely or unlikely it is that

Ms. Blackwood will be removed from this country, but certainly

it is a serious risk which itself is a serious collateral

1    consequence of her conduct, and a tragic thing for her and her

2    daughter.

3            Taking all that into account, I would probably have

4    imposed a sentence of a year and a day, but that actually would

5    be in effect a shorter sentence than the time-served sentence

6    that I will impose.

7            But long story short, I consider a time-served

8    sentence is the appropriate sentence here, notwithstanding the

9    seriousness of Ms. Blackwood's conduct.

10           So, with that, I will state the sentence that I intend

11   to impose.  And Ms. Blackwood, I would ask you to please rise.

12           Ms. Blackwood, it is judgment of this Court that you

13   are sentenced to time served to be followed by a period of

14   three years of supervised release.

15           During your term of supervised release, you will be

16   subject to the mandatory conditions that are set forth on page

17   28 of the presentence report.

18           In addition, the standard conditions of supervised

19   release, which are set forth on pages 29 and 30, and will be

20   set forth in the judgment, shall also apply.  They include that

21   you shall not possess a firearm or destructive device.  You

22   shall report to the probation office in the judicial district

23   where you are authorized to reside within 72 hours of your

24   release from custody.

25           And finally, you must meet the special conditions that

N7J3BLAS

1    are set forth on pages 30 and 31, including, just to flag a

2    few, that you must obey the immigration laws and comply with

3    the directives of immigration authorities, you must participate

4    in an outpatient mental health treatment program as set forth

5    in the presentence report, you'll be subject to the search

6    conditions set forth in the presentence report as well as the

7    requirement that you allow the probation department to install

8    any application or software that allows it to monitor or survey

9    your activity on your electronic devices.

10          In addition, and this is the one modification to those

11   set forth in the presentence report.  Number one, you shall

12   participate in an educational program or vocational training as

13   directed by the probation officer.  That is set forth in the

14   presentence report.  But more specifically, I will require that

15   if you are released, you shall within a reasonable time apply

16   for, and, if accepted to the program, participate in the

17   Columbia Justice in Education Program, which obviously has

18   served you well while in custody.

19          You shall not have any contact with the victim in this

20   case, and you shall be supervised in the district of your

21   residence.

22          Let me note with respect to the victim, I agree with

23   Mr. Rodriguez that certainly if you were to do anything that

24   threatened the victim with public exposure or anything of that

25   sort, it may well constitute a violation of law and supervised

1    release, and you could well find yourself going back to prison.

2    I also think Ms. Estevao was right that to the extent there is

3    any prospect of you remaining in this country, it will be

4    incumbent, really critical, that you remain on your best

5    behavior in that regard.  Anything of that sort would certainly

6    jeopardize your fate here and your daughter's fate with respect

7    to your ability to remain in this country.

8         I hope and trust that those possibilities, those

9    risks, are enough to deter you from doing anything of that

10   sort.  And I understand the victim's anxiety on that score.

11   But I am optimistic, hopeful that those are enough to assuage

12   his concerns on that score.

13        To be clear, the record should reflect I would have

14   imposed the same sentence, even if I had agreed with

15   defendant's arguments with respect to the enhancement in 2A6.2.

16        I'm not going to impose a fine because I find that

17   Ms. Blackwood would not be able to afford a fine.  I am,

18   however, imposing the mandatory special assessment of $100,

19   which shall be due and payable immediately.

20        Does either counsel know of any legal reason why this

21   sentence should not be impose as stated?

22        MR. RODRIGUEZ:  No, your Honor.

23        MS. ESTEVAO:  No, your Honor.

24        THE COURT:  The sentence as stated is imposed.  I find

25   that it is sufficient, but no greater than necessary, to

N7J3BLAS

1    satisfy the sentencing purposes set forth in Section

2    3553(a)(2), including the need to promote respect for the law,

3    to provide just punishment for the offense, to afford adequate

4    deterrence, and to protect the public from further crimes of

5    the defendant, of which, Ms. Blackwood, I hope I can take you

6    at your word when you tell me, if not for your own sake, for

7    your daughter's sake, that there will be no further crimes.

8           To the extent you are allowed to remain in this

9    country, you will be on supervised release.  If you stray, you

10   will be back before me, and I will be put in the unenviable

11   position to decide whether to put you back in the MDC, and I

12   hope you don't put me in that position.

13          More to the point, I hope you take advantage of the

14   resources that would be afforded to you, including mental

15   health treatment, that I think you clearly do need to address

16   at least some of the underlying causes of your conduct here,

17   and put you in a better position to care for yourself and your

18   daughter, who obviously so strongly needs your care and love.

19          So that is the sentence that I impose.

20          Mr. Rodriguez, does the government move to dismiss the

21   open counts at this time?

22          MR. RODRIGUEZ:  Yes, it does, your Honor.

23          THE COURT:  The open counts are dismissed.

24          Ms. Blackwood, to the extent that you did not give up

25   your right to appeal through your guilty plea and the plea

N7J3BLAS

1    agreement you entered into in connection with your plea, you do

2    have the right to appeal.  Any notice of appeal must be filed

3    within 14 days of the entry of the judgment of conviction.  And

4    if you cannot afford to pay the cost of an appeal, you may

5    apply for leave to appeal in forma pauperis.

6              Anything further from the government?

7              MR. RODRIGUEZ:  No, your honor.

8              THE COURT:  From the defense?

9              MS. ESTEVAO:  No, your Honor.  Thank you.

10             THE COURT:  I will sign a time-served order.  I am

11   assuming there is a detainer in effect, and in that regard,

12   Ms. Blackwood will be not be released today.  But in any event,

13   it will make clear that, subject to any detainers, she is to be

14   released.  So give me a moment and then we will adjourn.

15             Ms. Blackwood, let me say I wish you good luck, and I

16   wish your daughter even more the best of luck, and with that,

17   we are adjourned.  Thank you very much.

18             THE DEFENDANT:  Thank you, your Honor.

19             (Adjourned)

20

21

22

23

24

25